## Bosler's Estate.   Commonwealth Guarantee Trust & Safe Deposit Co.'s Appeal.

*Trusts—Accountant—Commissions—Interest—Continuous trust.*

In the case of a continuous trust, the trustee, except in extraordinary circumstances or when the instrument by which the trust is created so indicates, cannot diminish the fund which is to create the income during the life of the trust. For services rendered by way of collecting and paying over the income, the compensation is a fit charge upon the increase and is properly deducted from it; but the labor, care, and responsibility pertaining to the conservation of the capital itself are properly charged on it, and are to be deducted from it when the trust expires, or the particular trustee's relation to it ends.

. Where a trustee has improperly retained commissions on principal before the trust has terminated, he may be charged interest on the amount retained.

Argued April 26, 1894.  Appeal, No. 490, Jan. T., 1894, by Commonwealth Guarantee Trust & Safe Deposit Co., trustee, from decree of C. P. Cumberland Co., dismissing exceptions to auditor's report distributing estate of James W. Bosler, deceased.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to auditor's report.

The auditor, William Trickett, Esq., reported as follows:

" 1. James W. Bosler died in 1883, leaving a will which was proven Dec. 22, 1883. A widow and four children, Frank, Mary, Clinton and Helen, survived him and are still alive. ˙

" 2. After making certain bequests and devises, and, of the residue of the estate, giving one third to the widow, this will, in its 5th paragraph reads: ' The remaining two thirds I give, bequeath and devise in equal shares to my four children, Frank, Mary, Clinton and Helen, upon the following terms and conditions, and payable as follows; to-wit: one-half of each share as they personally attain their legal majority, the other half I

order and direct to be paid to                    to be held by
him in trust for my said children respectively, and to pay the
annual interest accruing thereon, to them severally for and dur-
ing their natural lives, and, at their and each of their deaths,
the principal of each share to the person or persons legally en-
titled to the same, giving to each of my said children the power
and authority to dispose of by last will and testament said fund
so held in trust for each of them.'

"3. The Commonwealth Guarantee Trust & Safe Deposit
Company was appointed, March 17, 1888, by the orphans' court
of this county, trustee to execute the duties prescribed by the
5th paragraph of the will.

"4. The children being all minors, the Fidelity Insurance,
Trust & Safe Deposit Company was appointed their guardian.
Frank Bosler and Mary C. Bosler have since attained their
majority.

"5. On Sept. 9, 1891, the Commonwealth Guarantee Trust
& Safe Deposit Company, trustee, filed its first account. In
this account, the trustee charges itself with $379,940.23, prin-
cipal, and $58,831.57 income, of which last sum, $486.64 was de-
rived from real estate, the rest from securities. The $379,940.23
contains the amount of $27,301.06 'cash from undivided secu-
rities.' This $27,301.06 was a part of one third of the amount
of undivided securities amounting at par to $32,673.04 that
were in the hands of the executors of the will of James W.
Bosler, and that none of the parties in interest would accept in
specie from the executors, agreeing that they should be placed
with the Commonwealth Guarantee, etc., Company for collec-
tion and distribution. The whole amount of these undivided
securities, $98,019.12, was divisible into three parts, one third
payable to Mrs. Helen Bosler, widow; one third to the guardian
of the children, and one third to the trustee. The company
collected $81,903.18 of them as agent, paying to itself, as trus-
tee, the share coming to it in that capacity, and handing the
other shares over to the parties thereto entitled. For services
as agent, the company charged five per cent on the amount col-
lected. The remainder of the corpus of the estate with which
the accountant charges itself was made up of $234,000 U. S.
registered bonds at 4 per cent, becoming due in 1907, a judg-
ment of $1,000 against D. S. Craighead, another of $6,000 against

Jacob Thudium, another of $1,000 against David H. Coble, another of $1,000 against George H. Miller, a mortgage of $1,000 against John A. Filbert, bonds of the Carlisle borough, amounting to $13,500, bonds of the Northern Central Railroad Co., whose par was $20,000.

"6. The Craighead, Miller and Coble judgments and the Carlisle bonds remain unconverted in the trustee's hands. Of the $234,000 U. S. bonds, $70,000 were sold by Drexel & Co. for $87,837.50, $164,000 for $202,080, in all $289,917.50. The sale of the $164,000 was made in two parcels, $40,000 on October 3, 1889, for $50,800, and $124,000 on March 19, 1890, for $151,280. The sale of the $70,000 was also made in two parcels, $40,000 on April 21, 1888, for $49,850, and $30,000 on June 16, 1888, for $37,987.50. The Northern Central Railroad bonds were sold on Jan. 18, 1889, for $23,500. These sales did not take place by order of the court. Whether any commissions were paid for any of these sales does not distinctly appear. (Col. Jennings says, ' Can't say, now, whether Drexel, the agent for selling the securities, remitted the whole amount, or deducted his commission as agent.' In a paper marked N, subsequently sent to the auditor, it is said, 'No brokerage commissions were paid.')

"7. The sale of the U. S. bonds was justified by the fact that they were losing value, the premium at which they were selling declining. The Northern Central Bonds also declined in value after the sale, not being worth on Jan. 16, 1892, when Col. Jennings, president of the Commonwealth Guarantee, etc. Company, testified, what was obtained for them.

"8. The reinvestment of the proceeds of these sales took place promptly; on the average within 30 days. No fault is found in regard to the expeditiousness of the trustee in discovering places for, and in making these reinvestments. The reinvestments are in bonds and mortgages ranging from small sums, e. g., $46.23, $87.71, $200 to $10,000, and, though about 150 in number, average about $2,400. We have no evidence of the labor involved, except the statement that the trustee by its president inspected every property in Harrisburg and vicinity and inquired of others, the property with only a few exceptions lying in the county in which the trustee is established, and indeed in the city of Harrisburg. The times during which these

loans are to run do not appear.   It is hence impossible to fore-
tell how many changes of investment will be made during the
course of the trust.

"9. The trustee claims, in his account, sundry credits, amount-
ing to $59,219.72, which included three per centum of the prin-
cipal sum in cash and securities, amounting to $10,309.18, and
five per centum on the income, diminished by $486.64 obtained
from real estate; that is, 5 per centum on $58,344.93; amount-
ing to $2,917.25.

"10. Exceptions to this report were filed on Sept. 29, 1891,
by the Fidelity Insurance, Trust & Safe Deposit Company,
as guardian of Mary, Clinton, and Helen Bosler, and by Frank
Bosler, now of age, objecting, (1) that the principal and the in-
come therefrom were not distinguished in the account; (2) that
the account did not specify from which of the several 'undi-
vided securities' the cash amounting to $27,301.06 was received;
(3) that the attorney's fees, $1,088.05, were excessive; (4) that
the charge of 3 per centum on the principal was not authorized
by law; (5) that if any commissions on the corpus were allow-
able, three per centum on $343,639.17 was grossly excessive;
(6) that the charge of five per centum commissions on the in-
come, to wit, $2,917.25, was excessive, and should be reduced.

"11. The undersigned was appointed auditor to pass on
these exceptions.

"12. During the hearing, the Commonwealth Guarantee, etc.
Co., trustee, conceded that there was an error in the account
on the assumption, accepted as correct by it, that the commis-
sions claimed on the principal should be deducted from it, and
the commissions claimed on the income should be deducted
from the income, and asked the auditor to report the account
as corrected thus:

| | | |
|---|---|---|
| The principal is . . . . . . | | $370,940.23 |
| Deduct the 3 per cent erroneous-ly taken from the income, . . . | | 10,309.18 |
| Actual amount of principal in trustees' hands, . . . | | 360,631.05 |
| Add the 3 per cent. commissions, $10,309.18 | | |
| Less . . . . . | 388.15 | 9,921.03 |

to the income for immediate distribution.

"AUDITOR'S CONCLUSIONS OF LAW.

"1. The accountant was in error in deducting any commissions on principal from the income.

"2. The attorney's fees of $1,088.05, in view of the magnitude of the estate and the possible necessity of legal assistance, are not excessive.

"3. [No commission on principal is now claimable. If it ever should be, it will be at the conclusion of the present accountant's trust. Until then, when a review of his entire administration and a consideration of all its merits and demerits shall be practicable, it would be improper to diminish the trust fund, the result of doing which would be to reward the trustee, as against the life tenants, by five per centum of the income of the original and reduced principal as well as by the entire annual income of the amount subtracted from the original principal.] [2]

[The accountant must be surcharged with
    the improperly deducted commission on
    the principal,     .     .     .     .     .     $10,309.18
Less,     .     .     .     .     .     .     .          388.15
                                                    ──────────
                                                      9,921.03
With interest from filing account, two years,         1,190.52
                                                    ──────────
Total surcharge,     .     .     .     .     .     $11,111.55] [3]

"5. The commissions of five per centum upon the income is ample compensation for the labor of the account, so far as income is concerned, but is not excessive.

"6. [The principal sum, reported in account at $370,940.23, is and must remain the principal sum of the estate until further decree of the court, together with the balance of the 'undivided securities,' amounting, at par, to $5,371.98.] [4]

"AUDITOR'S ARGUMENT.

"1. Deduction of commissions on principal from income: The accountant having conceded that the deduction of the commissions on principal from the income was erroneous, and asked leave to correct his account accordingly, argument on this point is superfluous.

"2. Permissibleness of commissions on principal: It is not

necessary to educe authorities for the familiar principle that the allowance of commissions is simply by way of compensation to the trustee for his services : Montgomery's Appeal, 86 Pa. 230 ; Slifer's Estate, 4 Phila. 225.   The rate of commission may vary according to the volume of the estate, or the risk, labor and responsibility involved.   Sometimes, one rate would be ample, at others, a higher or a lower would be legitimate. Cf. Cox's Estate, 5 W. N. 474; Dunlap's Estate, 9 W. N. 349; Heckert's Appeal, 24 Pa. 482; Duval's Appeal, 38 Pa. 112; Carrier's Appeal, 79 Pa. 230.   A difference exists between trusts which exist in order to convert and distribute a fund as quickly as expedient and those which exist for the administration of a fund through a term of years for the benefit, meantime, of designated cestuis que trust who are to receive the annual interest.   Cf. McElhenny's Appeal, 46 Pa. 347.

" In the former case the trustee, e. g., an executor, administrator, assignee for the benefit of creditors, receiver, etc., collects the assets, converts them, and is allowed, when he settles his account, a commission upon the corpus with which he has dealt.

" In the case of a continuous trust, one duty of which is to preserve the fund, as a source of periodic interest, dividends, rents, etc., the authorities do not recognize a right in the trustee, except in extraordinary circumstances, or when the instrument by which the trust is created so indicates, to diminish the fund which is to create the income during the life of the trust.   For services rendered by way of collecting and paying over the income, the compensation is a fit charge upon the income and is properly deducted from it.   But the labor, care and responsibility pertaining to the conservation of the capital itself are properly a charge on it, and are to be deducted from it when the trust expires, or the particular trustee's relation to it ends.   'The rule which may be safely deduced from the cases ' is ' that commissions upon the corpus of a trust estate are never allowable except when the fund is in the course of distribution.   The reason is inherent in the nature of a trust. Its purpose is to preserve, and it may be of unlimited duration, while that of administration is to divide, and implies dispatch. Hence, if commissions upon the capital are awarded to the successive trustees who may be called to its management, the fund,

instead of being intact, may be absorbed in the payment of its custodians:' Mintzer's Estate, 43 Leg. Int. 292, affirmed 9 Atl. R. 66.    In Butterbaugh's Appeal, 39 Leg. Int. 180, PAXSON, J., says, the interest and not the principal of a trust must bear the expense of managing it.   'Were it otherwise, the entire principal might be absorbed in paying the trustees commissions upon income.   A trustee is entitled to a reasonable compensation for his services as they are rendered, and, unless a contrary intention appear, the compensation must come out of the income of the fund, in the administration of which it is earned.'

"Hemphill's Appeal, 18 Pa. 303, was a trust during the life of A, remainder to her children.   During A's life, an account was filed by the trustee.   Commissions upon the reinvestments of principal, beyond the commissions upon the income, were disallowed.

"During the life of the trust, the trustee is entitled to a percentage on the income of the trust property.   He cannot be compelled to wait till the conclusion of the trust, and claim his compensation out of the corpus: Spangler's Appeal, 21 Pa. 335.

"So far as we have been able to discover, by a somewhat extended examination of cases, the commission on the corpus is never allowed until the trust has ended, or, at least, the particular trustee has ceased to be such.   Thus, in Perkins's Appeal, 108 Pa. 314, where there was a trust for life, at the end of which the fund was to be distributed, at the conclusion of the trust by the death of the life tenant, the trustee was allowed a percentage on income, and also on the corpus, consisting of stocks and other securities, which the trustee would have to sell in order to effect distribution.   In Biddle's Appeal, 83 Pa. 340, on the death of the life tenant, the trustee was allowed commissions on income, but also three per cent on the purchase money of land (a part of the capital) sold, and a lump compensation of $2,000 additional.   The trust had lasted nineteen years.

"In Beck's Estate, 5 W. N. 274, a trust for the minority of X. had come to an end by his attainment of age.   Even then it was held that a commission would not be allowed for investment or reinvestment, unless there had been extraordinary trouble.

" In O'Donnell's Estate, 4 W. N. 91, affirmed in Sharkey's Appeal, 5 W. N. 534, executors had been appointed by will to hold one share of the estate during the life of A., one of the testator's children, to pay to him and his children the income, one fourth to him and three fourths to his children, and at his death to pay the principal over to the children.   After settling their account as executors, in which they were allowed five per cent on $274,558.43, nine years later the account as trustees was settled.   They were held entitled to five per centum on the income of the share held by them in trust, but not to any commission on the corpus, because the same individual is not entitled to two commissions out of the corpus in several capacities as executor and trustee.

" The principle of this last decision is that of the act of March 17, 1864, 1 Purd. 551, pl. 213, P. L. 53, which forbids the same persons from receiving double commissions on the corpus, by the following words : ' In all cases where the same person shall, under a will, fulfill the duties of executor and trustee, it shall not be lawful for such person to receive or charge more than one commission upon any sum of money coming into or passing through his hands, or held by him for the benefit of other parties, and such single commission shall be deemed a full compensation for his services in the double capacity of executor and trustee : Provided, that any such trustee shall be allowed to retain a reasonable commission on the interest he may receive from any sum held by him in trust as aforesaid.'   Cf. Shiver's Estate, 12 W. N. 463 ; Pedrick's Estate, 5 Phila. 478.

" In Wister's Appeal, 86 Pa. 160, a trustee for the life of A., himself being entitled to the estate in remainder, after accounting, extra curiam, for five years, for the full income, was permitted, the life tenant A. dying, to deduct from the income in his hands commissions for the antecedent five years.   Of course, as the trustee was to take the corpus, the attempt was not made to claim commissions upon it.   In Culbertson's Appeal, 84 Pa. 303, the trust, which had lasted for nearly twenty years, ended, and the trustee was then allowed commissions on the fund.

" In Pedrick's Estate, 5 Phila. 478, the trustees had also been executors.   As executors they had, on settling their account, received a commission on the principal.   They subsequently

acted as trustees for a portion of this estate, received as trustees from themselves as executors, for the lifetime of Mrs. Pedrick. At her death, i. e., at the conclusion of the trust, they filed an account, asking for commissions upon the principal, as well as upon the income; five per cent was allowed on the income, one per cent on reinvestments, and, in addition, the gross sum of $90.00, the court declining to follow the auditor, who had allowed three per cent on the corpus. It is to be noted that the trust had terminated.

"In Shiver's Estate, 12 W. N. 462, the final account of a trustee for the lives of certain persons was filed at the expiration of a period of sixteen or seventeen years, and a commission of five per centum on the income and three per centum on the principal was allowed, together with $32.00 for traveling expenses.

"In Bell's Estate, 1 W. N. 20, an executor had also acted, by consent, as committee of an insane legatee. He had been compelled on four occasions to extinguish ground rents which formed a part of the estate, and to give security for the amounts received therefor. He claimed ten per cent commissions on the principal for his double service as executor and committee, and for his trouble in making reinvestments, besides five per cent commissions on the income. He was allowed five per cent commissions upon the income, and 3½ per cent upon the principal. Evidently, in this case, the account was final, concluding the double trust.

"Caley's Appeal, 47 Pa. 356, was a case in which a trustee was to have the care and management of a bequest, until the legatee reached majority, and meantime to apply the same to his use and benefit, filed an account at the close of the trust, and was allowed 1½ per cent commission upon the principal, a mortgage not converted. In McElhenny's Appeal, 46 Pa. 347, a guardian after nine years' service, and at the death of the ward, was allowed a compensation additional to percentage on annual proceeds.

"We are, we think, justified in accepting the language of Judge ASHMAN in Mentzer's Estate, supra, that 'commissions upon the corpus of a trust estate are never allowable except when the fund is in course of distribution,' with the possible qualification that when there is a change of trustee there may

possibly be commission on the corpus in favor of the retiring trustee.

"The allowance of a commission on the corpus earlier than the conclusion of the trust would lead to grave difficulties. In estimating the commissions, the duration of the trust must be considered, but it cannot be anticipated. More labor, responsibility, etc., will be incurred during a long administration than during a short one.

"The present trustee had been trustee for three years when it filed the account, and it asks three per centum upon the corpus of the trust. It may cease to be trustee to-morrow, and a succession of trustees might become necessary to execute the testamentary trust, which may last for sixty years. If each of these trustees charged three per cent on the corpus, for services covering three years of the trust, 50 to 60 per cent of the corpus would be consumed.

"Again, what has the trustee done, which in its opinion merits 3 per centum of the corpus? For maintaining the fecundity of the fund, it receives a benefit, it must be remembered, in the percentage on the income of the fund. But it has simply collected debts due by the United States and a half dozen other debtors, apparently without trouble, and has in turn lent the same out to about 150 persons. But the average life of these loans does not appear. Many of them will doubtless fall in in a year or two. The money received will have to be reinvested. The fresh loans will be called in, and the moneys collected reinvested. For aught that appears, the Commonwealth Guarantee, Safe Deposit & Trust Company will earn, every three years, at least as much as it has earned during the first three. Is it then to be paid a triennial commission of three per cent on the corpus, making during the probable life of the trust 50 or 60 per cent, besides 5 per cent on the annual interest collected?

"The only sensible rule, it seems, is to wait until the complete performance of the trust, to examine it, and to reward it, according to the aggregate deserts. If the 3 per cent commission is supposed to be the reward for the entire service towards the capital, during the life of the trust, except such as is covered by the annual commissions on income, then the allowance of it now offends the principle that the commission is

intended to compensate for work done, not for work which it is expected or hoped will be done: Walker's Estate, 9 S. & R. 223 ; Adams's Appeal, 47 Pa. 94.

" Besides, when a trust lasts for 30 or 40 years, the allowance of a given percentage on the corpus at the beginning is a very different award from that at the end. The difference, owing to the compounding of interest, would be enormous.

" The trustee, in its management of the trust, has behaved with sagacity and prudence, qualities which are expected in every trustee, for the supposed existence of which he is employed, and for the continuous exertion of which, during the entire period of the trust, he is rewarded by a commission upon the income produced by the capital thus conserved, and, finally, by a commission on the capital itself, if other methods of full compensation have not been employed.

" The principle of the act of March 17, 1864, supra, is not to be ignored. It seemed to the legislature improper that the same person should, in two capacities, mulct the corpus by two deductions in the form of commissions. It certainly could not be consistent with this principle, that the same trustee, in the same capacity, should subtract two or more commissions from the principal. Hence the necessity of waiting till the end of the present trust to determine whether the trustee is entitled to one commission. And, in determining that, doubtless, reference would be had to the incompleteness of the trust when the present trustee retires from it, and the possible compensation that may need to be paid to any successors.

" We think, then, that any charges for commissions upon the capital must be adjourned until the trust is closed so far as the present accountant is concerned, and that the compensation then to be awarded will be decided by a review of the entire course of the administration.

" 3. Commissions on income : The allowance of 5 per cent upon the income we do not consider excessive, in view of the decisions. The wisdom of the conversion of the securities is not questioned. The reinvestments, so far as appears, are sound. At least no complaint is made of them on that score. No unreasonable delay in reinvestment occurred. The U. S. bonds and the bonds of the Northern Central R. R. Co. were disposed of at a premium. The trustee did not make this premium, and

of course deserves no credit for its existence.   He realized it by a timely sale.   His reinvestments average somewhat over $4,000 a piece.   He has promptly collected the interest and is responsible for it and the principal.   We have concluded that 5 per cent commission on the income is allowable.   Five per cent on income is recognized as proper in King's Est., 11 Phila. 26; Wharton's Est., 11 Phila. 39; Skinner's Est., 4 Phila. 189; Eshleman's Ap., 74 Pa. 42; Wood's Ap., 86 Pa. 346; Cusack's Est., 3 Brewst. 325; Cf. Bird's Est., 2 Pars. 170.

" 4. The allowance to attorneys: The evidence is very slender upon the services of the attorneys.   The estate however is large; much professional consultation, advice and labor may easily be conceived to be necessary.   We have concluded that the allowance claimed for attorneys of $1,088.05 is not excessive.

" 5. The interest on the excessive commission: The accountant, when he filed his account, appropriated to himself $9,921.03 which he ought then to have paid over to the cestuis que trust. As the trustee has had the use of this sum for two years, claiming it as his own, there can be no question that he is chargeable with interest upon it at the lawful rate for the space of two years."

Accountant filed exceptions (2–4) to conclusions of law as in brackets, and (1) in not finding facts as below.   The auditor reported on the exceptions as follows:

" 1st Exception. It is true that the accountant received U. S. 4 per cent bonds, when par was $234,000, at a valuation of $285,838.25 and sold them for $289,917.50.   What the present value of these bonds would be is not shown in the evidence. The Northern Central R. R. bonds were received at the valuation of $20,000, and were sold for $22,500.   The products of these conversions were reinvested in six per cent securities. These securities were, at the time of their conversion, however, actually worth more than the appraisement.   The accountant did not create the increment which it realized.   It acted prudently, carefully and properly in converting them when it did, and in gaining more than the par or the estimated value.   But while the failure to so convert might have been negligent, and exposed to a surcharge, we cannot see that the faithfulness of the accountant, which is clear, entitles it to compensation entirely exceptional. . . . Exceptions overruled."

*Errors assigned* were (1–4) dismissal of exceptions, quoting them.

*M. C. Herman, Weiss & Gilbert*, with him, for appellant, cited: Biddle's Ap., 83 Pa. 340; King's Est., 11 Phila. 29; Nevin's Est., 7 Phila. 506; Heckert's Ap., 24 Pa. 482; Wharton's Est., 11 Phila. 39; Harland's Accounts, 5 Rawle, 330; Eshleman's Ap., 74 Pa. 42; Perkins's Ap., 108 Pa. 314; Davis's Ap., 100 Pa. 201; Harbster's Ap., 125 Pa. 1; Bell's Est., 1 W. N. 20; Mintzer's Ap., 33 Leg. Int. 292; Hoxie's Est., 3 Dist. R. 296.

*J. E. Barnitz* and *F. E. Beltzhoover*, for appellee, cited: Butterbaugh's Ap., 98 Pa. 351; Mintzer's Est., 9 Atl. 6; Hemphill's Ap., 18 Pa. 303; Spangler's Est., 21 Pa. 335.

PER CURIAM, May 7, 1894:

All that can be profitably said, in relation to the questions involved in this case, will be found in the clear, concise and very satisfactory report of the learned auditor. We are quite content to adopt his opinion and affirm the decree thereon.

Decree affirmed and appeal dismissed with costs to be paid by appellant.