# Riter's Estate.

*Trust and trustees—Executors and administrators—Commissions —Special services—Act of March 17, 1864, P. L. 53—Claim for additional services—Disallowance.*

1. The rule that commissions on the principal of a trust estate will not be allowed except where the fund is in the course of distribution, is of general application and will only be departed from in exceptional cases, as where the trust is of long duration and the fund has been largely increased by the skillful management of the trustee.

2. An executor is not entitled to a commission on the enhanced value of stocks and other investments made with money on which commissions had been charged and allowed in a prior account.

3. A trustee of an estate exceeding $3,500,000 in value claimed $75,000 as additional compensation for alleged extraordinary services, consisting mainly of a most advantageous sale of the plant and business of a manufacturing company in which the estate owned the controlling interest. It appeared that the trustee had already received compensation in his capacity as sole executor of the estate, which consisted partly of shares of stock of such company, of which the trustee was president, in which capacity he received an annual salary of $12,000 per year; that during the period in question claimant had received the sum of $50,000 for special services from the company; that the compensation allowed him as executor, was approximately ten per cent. of the amount distributed; and that in making the sale in question he had profited personally by receiving an enhanced price for the stock individually held by him. *Held,* the claim for additional compensation was properly refused.

Argued Oct. 17, 1917.  Appeal, No. 177, Oct. T., 1917, by J. Gilmore Fletcher, from decree of O. C. Allegheny Co., March T., 1917, No. 249, refusing trustee's claim for additional compensation in Estate of Thomas B. Riter, deceased.  Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ.  Affirmed.

Exceptions to adjudication.

Upon the audit of the first account of the trustees of the estate of Thomas B. Riter, deceased, MILLER, J., filed the following opinion:

The question is, a claim for compensation by a trustee who had been sole executor and received compensation; the allegation is that by reason of extraordinary circumstances and extraordinary labors, the trust property has been largely increased.

At the first account filed by Mr. Fletcher, sole executor of the estate of the decedent, there was awarded to the widow $294,183.68; to the son $745,778.86; to the executor and his cotrustee, the Fidelity Title & Trust Company, $842,250, the latter consisting of 5,615 shares of the Riter-Conley Manufacturing Company stock; compensation was allowed to the executor in the sum of $240,000; the entire assets with which the executor was charged was $3,649,297.63; the stock devised by the testator in the first paragraph of the will to the trustees is described as a controlling interest in the Riter-Conley Manufacturing Company, there being ten thousand shares, the said trust stock to be held intact so that the business may be continued, the dividends or income to be paid therefrom first to testator's wife and, after her death, to his son, Joseph; then absolutely to Joseph's children, if any; in case of the death of Joseph without issue, to his appointee by will; with power to sell a portion or the whole of such trust stock, if deemed advantageous, with the consent of the life tenants; the proceeds to be invested in safe securities.

Of the remaining stock in the Riter-Conley Manufac-

turing Company, 3,384 shares were owned by five others, inter alios, who were hostile to the majority interest; in 1908 these shares were purchased through Mr. Fletcher for the Riter-Conley Company for $507,600, or $150 per share; the purchase-price and the large credit balance were paid out of earnings of the company.

Mr. Fletcher became vice-president of the company in 1908, and shortly thereafter, president, receiving in that capacity a salary of $12,000 per year; he was the owner of two thousand shares of stock; no dividends were paid, the earnings being used in betterments and paying back the money which the cestui que trustents advanced in the purchase of the outstanding stock and meeting running expenses. The finances of the company at times were difficult; Mr. Fletcher personally loaned the company $200,000 to tide over its business affairs; at one time during the lean years of business a demand was made for payment within ninety days of $400,000 of indebtedness to one of the banks; two other banking institutions, having confidence in Fletcher's management, took care of this loan to the extent of $500,000 and gave the management the benefit of its credits. The war and changed conditions were favorable factors in increasing the prosperity of the company and its intrinsic value.

In the spring of 1916, at the suggestion of a third party to Mr. Fletcher, this party evidently representing the prospective purchaser, negotiations were entered into for the sale of the entire Riter-Conley Manufacturing Company's plant to the Marshall-McClintic ·Foundry Company; these negotiations began with an offer of $2,-500,000; they continued from February to April 12th, when the sale was closed by the transfer of the entire ten thousand shares of capital stock, including all the property and assets of the company for $3,113,698, or $311 per share; in addition, the purchaser assumed obligations of the Riter-Conley Manufacturing Company of over $700,000, and presumptively obtained its bills receivable and cash on hand. The profit on the trust stock

by the sale was approximately $906,000; the sale was cash; the whole purchase-price of the trust stock is invested in carefully selected standard securities; the income from the trust stock, approximately, is $70,000 per year, payable to Joseph Riter.

The property was skillfully managed by Mr. Fletcher as its president; the sale was primarily the result of his business judgment and skill; he was ably aided by the cotrustee through its president.

For effecting this sale and conserving the trust estate during this period, increasing the corpus thereof to the amount indicated, Mr. Fletcher asks for special compensation of $75,000, payable out of corpus; the life tenant joins in the request, preferring to have it paid out of corpus, but would not object to having it paid out of the income. The cotrustee, who was not executor, offered no testimony in opposition to this special claim but places itself on record at the hearing, and by brief of its counsel, that any allowance of this claim is not a waiver of the cotrustee's right to compensation on income as accounted for and on corpus when the trust terminates, and the contention raises the question that the claim is barred by the act of assembly and that the facts are not of such an extraordinary and special kind as to warrant a departure from the rule or bring it within any of the exceptions, where, by adjudicated cases, special claims in this double capacity have been allowed.

The Act of March 17, 1864, P. L. 53, provides: "In all cases where the same person shall, under a will, fulfill the duties of executor and trustee, it shall not be lawful for such person to receive or charge more than one commission upon any sum of money coming into or passing through his hands or held by him for the benefit of other parties; and such single commission shall be deemed a full compensation for his services in the double capacity of executor and trustee, provided, that any such trustee shall be allowed to retain a reasonable commission on the interest he may receive from any sum held by

him in trust as aforesaid." A careful examination has been made of all the authorities submitted by both sides in support of and against the contention that for extraordinary and special services producing an extraordinary result, exceptions arise to the foregoing rule which justify the court in awarding special compensation to a trustee who has already been compensated as executor.

Bosler's Est., 161 Pa. 457, was a case not arising out of the double capacity in the same person of executorship and subsequent trusteeship. While it is there indicated that in extraordinary circumstances the corpus of a trust estate may be liable to compensation, the case has no application to the question at bar, for the reason that it is divorced from the element of a prior executorship where compensation had been allowed. Thouron's Est., 182 Pa. 126, is also a case of trusteeship alone, after the estate had been duly administered upon by a different fiduciary. It there appears that the trustee filed a first account in 1882, claiming no compensation; a second in 1891, claiming no compensation; a third in 1892, claiming no compensation, and a fourth, the account in question, in 1896, covering a period of four years since the former account in which, on account of services arising out of special labor in converting unproductive real estate and thus increasing the capital, a request for some compensation was allowed. While the court comments upon the special services rendered and affirms the allowance made, it must be observed that the Act of 1864 was not in question, and that whatever allowance was made on account of compensation necessarily was credited against the final charge when the trust terminated. It is manifest, therefore, that the case in its facts and in its conclusions is not authority for an exception under the Act of 1864. So also in Penn-Gaskell's Est., No. 1, 208 Pa. 342, there was no double capacity of executor and trusteeship; the simple question was whether a commission should be allowed a trustee presently in the sale of real estate under the Price Act, authorized by the court, the opinion stat-

ing: "The rule, therefore, is that commissions on the principal of a trust estate will not be allowed except where the fund is in course of distribution. While this rule is one of general application, it is not a fixed and unvarying one, and will be departed from, as in Thouron's Est., 182 Pa. 126, where the circumstances are unusual, the trust of long duration, and when the fund has been largely increased by the skillful management of the trustee. The rule, however, is such a salutary one that it should be departed from only in exceptional cases." In Davidson's Est. (No. 2), 204 Pa. 381, again not applicable as to the facts so far as the double office is concerned, yet clearly applicable on principle, it is distinctly decided that an executor is not entitled to commission on enhanced value of stocks and other investments made with money on which commissions had been charged and allowed in a prior account. Harrison's Est., 217 Pa. 207, also referred to by claimant, merely states the well-recognized doctrine that compensation is based upon services and labor performed and not upon any rate or percentage as a fixed rule; that the rate or percentage may be a convenient method of arriving at compensation and that a general amount stated for compensation may be preferable to a rate of commission. The decision distinctly refused compensation on capitalized ground rents in the account there filed, indicating clearly that compensation, if allowed at all, must be at the close of the trust; here again, there is no question of a prior executorship in the same person.

On the other hand, the claimant has authority for his contention in Kerrigan's Est., 36 Pa. C. C. 57, where the Orphans' Court of Philadelphia allowed compensation to a trustee who had been executor, by reason of the special circumstances and his particular skill in effecting an advantageous sale of the trust stock. The facts were that the decedent was a member of a firm carrying on an industrial business; after his death a limited partnership was formed which took over the business; the trustee re-

ceived for the purposes of the trust three hundred shares of the par value of one hundred dollars in this limited partnership, and he was a manager therein; subsequently what the court states was the "psychological moment," he prudently sold this stock at two hundred dollars per share, increasing the principal thirty thousand dollars, claimed and was allowed compensation of five per cent. on the amount. It will be observed that while the trustee was a manager in the limited partnership there is nothing to indicate that he was otherwise interested therein or that he received compensation in any executive office in the partnership, two factors which have a most important bearing upon the contention here. For, it must be remembered that Mr. Fletcher was not only president of the Riter-Conley Company at the salary of $12,000 per year and therefore vitally interested in the business success of the concern under his management, but that he was the owner of two thousand shares of its capital stock, one-fifth of the whole, and that therefore what he did, and in this case most efficiently did, was largely his duty as the president of the company, and was necessarily influenced by the preservation of his own property to the extent of one-fifth ownership therein.

When the allowance of $240,000 was made to him upon the filing and audit of his executor's account it was recognized that this very large compensation far exceeded, was almost double in fact, the maximum compensation allowed to executors, based upon five per cent. of all the assets received by them, to wit: $3,649,297.62. Irrespective of the fact that the widow and son, the life tenants, made no objection to this large charge, it could not have been permitted in view of the fact that the ultimate remaindermen of this estate are unknown and were not represented, had this act of assembly not been in mind, which barred him from claiming compensation hereafter as trustee upon the corpus of the trust estate.

Therefore, granted, that he performed most valuable services, whereby this trust property has very materially

enhanced in value, and that if he were in any other position, excepting the one of prior executor and subsequent trustee, he would be entitled as agent or otherwise to compensation for effecting this sale, yet in view of the cogent facts that he was abundantly compensated in his executorship account necessarily covering future administration; that he was the executive officer, under high salary, of the company, which as a whole profited by this sale; and that in making the sale he profited personally in the enhanced price of his individual stock; it cannot be said that his services and labor under these facts are of such a special and extraordinary kind as to bring his claim away from the bar of the Act of 1864; for these reasons it must be refused.

Further facts appear from the following opinion by MILLER, J., sur exceptions to the decree of the auditing judge:

Without enlarging on the opinion of the trial judge whose general conclusions are affirmed it is pertinent to note that in addition to claimant's large compensation as executor, allowed in view of the bar to future compensation as trustee; to his individual ownership of the stock for which he profited in the enhanced sale, to his annual compensation of $12,000 per year as president he received from the company the sum of $50,000 for special services during the same period.

It is pertinent further to note that while the statement in the opinion that the compensation allowed the claimant as executor was almost double the maximum compensation allowed fiduciaries generally is not exact if the percentage be arrived at by dividing the total assets into the commissions making it more nearly 6.57% yet the claimant admits that the executor's compensation exceeded 10% and maybe 12% of the amount distributed.

What he there received as executor and in addition received as executive officer, owner of stock and for special services from the company whose management was controlled by this trust stock excluding his addi-

tional compensation as executor of Mrs. Riter's estate, much of which was in this company, the services for which were performed at the same time, all demonstrate that under the facts and the law he cannot be allowed further compensation out of the corpus of this trust estate.

The auditing judge refused the claim for additional compensation. The court in banc dismissed exceptions to the decree. J. Gilmore Fletcher appealed.

*Error assigned,* among others, was in dismissing exceptions to the decree of the auditing judge.

*Edward B. Vaill,* with him *Rose & Eichenauer,* for appellant.

*Park J. Alexander,* of *Chantler, McClung & Alexander,* for Fidelity Title & Trust Company, cotrustees, appellee.

PER CURIAM, January 7, 1918:

It unanswerably appears in the opinion of the learned auditing judge disallowing the claim of the appellant for extra compensation, and in the opinion of the court dismissing the exceptions to the adjudication, that his claim ought not to have been allowed, and, on those opinions, his appeal is dismissed at his costs.