## Griffith's Estate

*Moore & Gourley*, and *R. W. Knox*, for accountant.

*J. R. McCreight*, for exceptants.

CRUMRINE, P. J., July 12, 1935.—The will of John M. Griffith provides as follows:

"Fourth. At the death of my said wife, it is my will and I hereby direct that all my estate, real, personal and mixed, shall be converted into money as soon as in the opinion of my said executors the same can be most advantageously done, and for that purpose I hereby authorize and empower my said executors, or the survivor of them, to sell and convey all or any part of my real estate, either at public or private sale or sales, at such time or times, for such price or prices and upon such terms and conditions as to my said executors, or the survivor of them, shall seem best, and to make, execute and deliver good and sufficient deed or deeds to the purchaser or purchasers thereof, free and discharged for any liability for the application of the purchase money, the same as I could do if living and present, and distribute the money thus arising as follows, to-wit:—

"To my daughter Margaret V. Caldwell one-half of said sum to be hers absolutely.

"To my said son, Edwin S. Griffith, I give the other one-half of said money, the same however, to be held in trust by my said executors, or the survivor of them, for and during the lifetime of my said son, and the income derived therefrom paid unto my said son and at the death of my said son, the principal shall be paid unto my heirs

then living in accordance with the intestate laws of this Commonwealth. But should my said son die leaving issue to survive him, it is my will and I hereby direct that the sum so held in trust for my said son, shall be paid unto his said issue."

At the audit of his estate, one half of the residue was awarded by the decree of distribution as follows:

"E. S. Griffith, Surviving Executor, conditioned upon his filing a proper bond, or to a trustee to be appointed, ½, in trust for E. S. Griffith, son, for life, with remainder over in accordance with terms of decedent's will 9,226.55".

In pursuance of this decree of distribution, a bond was filed, with E. S. Griffith and Maryland Casualty Company as obligors, in the sum of $10,000. The condition of the bond is as follows:

"The condition of this obligation is such that if the above bounden E. S. Griffith, Surviving Executor and Trustee of the Estate of John M. Griffith, deceased, late of Mount Pleasant Township, Washington County, Pennsylvania, shall at any time when required by the Orphans' Court of the County of Washington, render a just and true account of the management of the property and estate of the said decendent, under his care; and shall also deliver up the said property agreeably to the order and decree of the said Court, or the directions of the law; and shall, in all respects, faithfully perform the duties of Trustee of the said Estate of John M. Griffith, deceased, then the above obligation shall be void, otherwise it shall be and remain in full force and virtue."

Upon filing this bond, E. S. Griffith took over the assets of the estate, held them up to the time of his death and used the income. He died on December 16, 1934, and Olive Grace Martin files this account as "Executrix of Edwin S. Griffith . . . who was Trustee of John M. Griffith Estate".

J. W. Caldwell and Mary I. Caldwell have filed exceptions. They are children of the Margaret V. Caldwell

who was a legatee under the will of her father, John M. Griffith.

These exceptions were originally to credits for premiums on bond and to attorneys' fees, but they have been withdrawn so far as they apply to the bond premiums, since it appeared at the audit that there had been an agreement with the exceptants that those premiums should be paid by the estate.

The allowance for attorneys' fees is objected to on the ground that they are payable out of the income of the estate and not out of this corpus now before us for distribution.

This question is tied up with one of distribution also raised by the exceptants. They refuse to accept in kind all of the assets which were held by the accountant's testator, but demand cash to the amount at which the distribution was made to E. S. Griffith in the John M. Griffith estate. As a practical matter they have agreed to accept part of the securities at their face value, but say that they are not obligated so to do.

The exceptants' position is that E. S. Griffith, under the award to him, became a debtor to those entitled in remainder for the exact amount awarded, and did not become a trustee for their benefit. Therefore, they are not concerned with attorneys' fees, the depreciation or appreciation of securities, or the manner in which the fund was handled—all they want is to have the debt paid in full. This raises a necessity to consider the question of law involved as molded by various acts of assembly and the decisions thereon.

The Act of February 24, 1834, P. L. 70, sec. 49, provides:

"Whenever personal property is bequeathed to any person for life, or for a term of years, or for any other limited period, or upon a condition or contingency, the executor of such will shall not be compelled to pay or deliver the property so bequeathed to the person so entitled,

until security be given, in the Orphans' Court having jurisdiction of his accounts, in such sum and form as, in the judgment of such court, shall sufficiently secure the interest of the person entitled in remainder, whenever the same shall accrue, or vest in possession."

The Act of April 17, 1869, P. L. 70, gives the owner of a contingent interest in the estate of any decedent the right to require "the legatee of any previous interest in the same property" to give security.

The Act of May 17, 1871, P. L. 269, requires the executor to make delivery to the life tenant when proper security has been given.

It was early decided that, when the life tenant gave security to protect the remaindermen and received the legacy, he became a debtor to such remaindermen for the amount received: Reiff's and Umstead's Appeal, 60 Pa. 361; Reiff Appeal, 124 Pa. 145.

In the latter case, Judge Hanna (whose opinion was adopted by the Supreme Court) said:

"The result was in effect to make the sum thus received by testatrix a part of her individual estate. It could be invested by her in the purchase of real estate, embarked in mercantile adventures or stock speculations, or expended in her living and family expenses as she deemed advisable. The money became essentially her own; and she was simply a debtor to the parties ultimately entitled at her death, whose claim is now payable out of her estate, and, in the event of its insolvency, by her sureties upon the bond given by her as legatee for life. The remaindermen are now creditors of the estate of testatrix, and entitled to interest from the date of her death. It is clear they are not legatees under her will, else their shares are subject to the collateral inheritance tax. But they are legatees under the will of John Reiff, the original testator, and as such are entitled. It follows, therefore, that testatrix cannot be allowed compensation for the care of the so-called trust fund; nor can it be diminished by deducting any portion of the expenses of

the settlement of the estate. Such would be the case even were the parties now entitled considered as legatees of testatrix."

The reason for this position as to the liability of the life tenant is doubtless that given by Judge Gest in his dissenting opinion in Loewer's Estate, 27 Dist. R. 753, from which I quote at length as follows:

"According to the early common law, a life estate in personal property, with remainder over, could not be created, and a gift for life carried the entire estate: 2 Kent, 352. But limitations over after a life estate were recognized in equity and under wills, even without the intervention of a trustee, though it was always held that the life tenant was entitled to the possession of the thing so bequeathed, and this right carried with it the power to make his possession valuable, according to circumstances: Sutphen v. Ellis, 35 Mich. 446. Consequently, he could convert the property into another form or change the investments, not as trustee, however, but by virtue of his title, though it necessarily followed that the life tenant or his estate would be liable to the remainderman for any depreciation. This is the principle underlying what was said by Judge Hanna in Reiff's Estate, affirmed by the Supreme Court, in 124 Pa. 145, that the result was in effect to make the sum received by the life tenant a part of his individual estate. In this case, and in others that followed it, such as Letterle's Estate, 23 Dist. R. 471, 248 Pa. 95, a bond had been given by the life tenant, and the court laid some stress on that fact; but whether such security be entered or not, it seems to me that the title of the life tenant to the res, the thing which is the subject of the bequest, is not affected. That title is given by the will; the entry of security is only a requirement to be complied with in order to gain possession, and by which the remaindermen are enabled to enforce a liability which existed independently. According to the remarks of Chancellor Kent in Westcott v. Cady, 5 Johns. Ch. 349, the requirement of security by a court of

chancery is only a rule of practice. In that case the chancellor said: 'Formerly the *cestui que trust* or legatee entitled in remainder after an estate for life was allowed to call upon the legatee for life, not only for an inventory, but for security that the goods should be forthcoming at his decease: Vachel *v.* Vachel, 1 Ch. Cas. 129; Hyde *v.* Parratt, 1 P. Wms. 1; Slanning *v.* Style, 3 P. Wms. 334. But the rule of practice has since been altered, and in Foley *v.* Burnell, 1 Bro. 244, Lord Thurlow observed that the courts do not now require the tenant for life to give security, but only to exhibit an inventory to be filed.' In this latter case, however, it was further stated by Lord Thurlow that the court would require security in cases of danger."

See also Letterle's Estate, 248 Pa. 95; Dempster's Estate, 308 Pa. 153.

In Weir's Estate, 251 Pa. 499, the widow, who was life tenant under the will, declined to give bond, and at her request a trustee was appointed who gave the necessary security. The court held that this trustee occupied the same position as to the remaindermen which the life tenant would have held had she given bond to secure their interests. The trustee was regarded merely as her "substitute", and his liability to the remaindermen was held to be that of a debtor and not that of the ordinary trustee. This case was decided in 1916.

Several cases decided after Weir's Estate, supra, pointed out that the basis of the decision in that case, holding the trustee to be an insurer of the fund, was the fact that he was appointed solely at the instance and for the benefit of the life tenant—and they adopt the converse of the rule, to the effect that when appointed with the consent and for the benefit of all the parties in interest, including the remaindermen, the trustee's liability and responsibility are only those of a general trustee: Loewer's Estate, 263 Pa. 517; Kirkpatrick's Estate, 284 Pa. 583; Ertel's Estate, 19 D. & C. 95. In the case last

cited, Judge Stearne gives an admirable historical summary of the law.

Weir's Estate, supra, was decided in 1916, and the next year the Fiduciaries Act of June 7, 1917, P. L. 477, in section 23, after a substantial reënactment of the Act of 1871, supra, provided, as an alternative to the giving of a bond by the life tenant, the appointment of a trustee, for the benefit of all parties in interest. The act expressly provides that the trustee shall not be an insurer of the fund, but shall be liable only for "such care, prudence, and diligence in the execution of the trust as other trustees are liable for."

In the report of the commissioners who drafted the act it is explained that this last provision as to the trustee's liability is to avoid the effect of the decision in Weir's Estate, supra, by which the trustee was made insurer of the fund.

The effect, then, of the Fiduciaries Act is to allow the life tenant two alternatives. He may give bond as provided by the prior acts or he may have a trustee appointed. And if there be a trustee appointed, his responsibility is only that of any other general trustee. In this regard it makes no difference at whose instance the trustee was appointed: Printzenhoff's Estate, 10 D. & C. 335. He becomes a trustee for all the parties in interest.

But there is nothing in the Fiduciaries Act to alter the position or responsibility of the life tenant who gives his own bond and takes possession of the assets, nor has the reason for the rule disappeared or changed. The act, as to this alternative, is a reënactment of the Act of April 17, 1869, P. L. 70, and the commissioners expressly state that the change needed in the existing law was to give the courts express authority to appoint a trustee when the life tenant refuses or is unable to give a bond.

I find as a matter of law that, when a life tenant gives bond to protect the remaindermen, his relation to them is still that of a debtor to his creditors, and partakes nothing of a trusteeship.

In the case at bar, however, the accountant relies principally on the fact that her testator, E. S. Griffith, was not only life tenant of the fund in question but by the will under which he took was made executor and testamentary trustee. In the bond which he gave he describes himself as "Surviving Executor and Trustee of the Estate of John M. Griffith". The accountant then contends that we do not have the situation where the life tenant as such elects to take over the fund and gives his bond to secure the remainderman, but that he gives bond as testamentary trustee under the second alternative of the Fiduciaries Act, and that therefore his liability is only that of a general trustee.

In the decree of distribution in the estate of John M. Griffith, filed to no. 94, August term, 1929, A. A., the award of this legacy appears as follows: "E. S. Griffith, Surviving Executor, conditioned upon his filing a proper bond, or to a trustee to be appointed, ½, in trust for E. S. Griffith, son, for life, with remainder over in accordance with terms of decedent's will . . . $9,226.55."

It is not clear just why this particular phraseology was used, but at any rate it recognizes the fiduciary capacity of E. S. Griffith, and the requirement of a bond from a testamentary trustee was obviously because he was also the life tenant, and it was felt that the remaindermen should have some protection additional to the confidence displayed by the testator. At any rate, he gave a bond as "surviving executor and trustee" and evidently considered himself as acting in a fiduciary capacity.

That the effect of his father's will was to make E. S. Griffith a trustee is beyond question, and there is no legal objection to his acting in that capacity although himself a beneficiary: Bouvier's Estate, 12 Dist. R. 149 (Judge Penrose). It has been held that such a situation cannot exist in the case of a spendthrift trust: Patrick, etc., v. Smith et al., 2 Pa. Superior Ct. 113; but in Fox's Estate, 264 Pa. 478, even a spendthrift trust was upheld where

it was created by will and the trustee was to act in that capacity for others as well as for himself.

Admitting that E. S. Griffith then took as trustee, does the fact that he was also the life tenant render him liable to the remaindermen as an insurer of the fund under the rule of Letterle's Estate, Weir's Estate, etc., above? I think not. The reason for that rule is not present here. It is not a case of the res passing to the life tenant because the will gives him the title. The will does not do that but interposes three trustees of whom he happens to be the survivor. The will does not require him to give bond, but, on account of the status of the estate at the time of distribution, the court does.

The testator fixed his relation to the fund, that of one of the trustees, through whom he was to receive the income as long as he lived. As life tenant he was given no control over the assets, nor any power to consume.

The distinction is drawn in Kirkpatrick's Estate, supra, where the widow was given a life estate with complete management and power to consume. Mr. Justice Kephart in that case said:

"Here testator did not direct his residuary estate to be held in trust for the use and benefit of his wife for life or as long as she remained his widow, but gave her 'full possession, control over and management of the principal of the personal estate and to manage and invest the same in whatever manner she deems proper.' "

I am of the opinion that the fact that the testator named E. S. Griffith as trustee takes the case out of the rule which places a life tenant in the position of a debtor to the remainderman, and that his liability is only that of an ordinary trustee, responsible for ordinary care, prudence, and diligence.

This disposes of the question of distribution. There is nothing to show that E. S. Griffith failed to use reasonable care and prudence in the investment of the trust funds, and if some of the securities have depreciated in

value through no fault of his, that loss must fall on the remaindermen and not on his estate.

We have still the question of attorneys' fees. Had the position of E. S. Griffith been found to be that of a debtor for the actual ammount received, certainly a lesser sum would not have satisfied the remaindermen and deductions for attorneys' fees would have been improper. But under our holding, that E. S. Griffith took and held the estate as a trustee, he is entitled to the services of a lawyer, and we must inquire into the propriety of the fees charged—whether the amount is proper and whether they are chargeable to corpus or income.

While there have been many cases laying down rules as to the payment of commissions, attorney's fees and other expenses, when out of principal and when out of income, there are so many qualifications that the rules are of little value except as applied to the particular state of facts in connection with which the rule has been enunciated.

In general, where the trust is a continuing one, the income should bear the burden: Spangler's Estate, 21 Pa. 335; Butterbaugh's Appeal, 98 Pa. 351; Bosler's Estate, etc., 161 Pa. 457; Sinkler's Estate, 10 Dist. R. 399; Miller's Estate, 12 Dist. R. 719. And when the account is a final one, contemplating distribution of corpus, then that corpus should pay the expenses: Peterson's Estate, 14 Phila. 268; Lawrence's Estate, 13 Dist. R. 257; Bosler's Estate, etc., 161 Pa. 457.

But even those cases which attempt to fix a hard and fast rule are free to admit that "equitable considerations" or unusual circumstances may require a variation: Lafferty's Estate, 184 Pa. 502; Crawford's Estate, 62 Pa. Superior Ct. 329, 256 Pa. 504.

The entire subject is briefly summarized in McCaskey's Estate, 307 Pa. 172, 182:

"After all, while what appellants rely on is the general rule, back of it and superseding it, wherever applicable, is the principle that 'the rule regarding commissions

to trustees is, in all cases, compensation' (Harrison's Est., 217 Pa. 207; Riter's Est., 260 Pa. 168, 173), and this is necessarily to be determined by the facts and circumstances of each case."

In other words, whoever has benefited by the trust's administration and the accounting should pay for it, and if both benefit the expense should be shared in equal or unequal amounts to be determined from the facts.

Certainly there is difficulty in ascertaining as a fact the proportions in which the respective estates benefit, and should pay. This will not be attempted since there is no standard of measurement sufficiently delicate to reflect the respective benefits of the parties. It would seem fair and sufficiently close to say that the fees should be equally divided between the two parties to be benefited and, therefore, the exception as to attorneys' fees will be sustained as to one half of the amount charged.

### Decree

And now, July 12, 1935, for the reasons given above, the exceptions to the account are overruled except as to one half of the attorneys' fees charged and a schedule of distribution in accordance herewith is filed herewith.