## Davidson's Estate (No. 2).

*Executors and administrators—Commissions—Appreciation in value of securities.*

An executor is not entitled to commissions on an enhanced value of stocks and other investments made with money on which commissions have been charged and allowed in a prior account.

Submitted Oct. 23, 1902.    Appeal, No. 142, Oct. T., 1902, by Charles Davidson, from decree of O. C. Beaver Co., June T., 1902, No. 16, dismissing exceptions to auditor's report in estate of Daniel R. Davidson, deceased.    Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Exceptions to report of M. F. Mecklen, Esq., auditor.

The auditor found amongst others the following facts:

1. Letters testamentary upon the estate of Daniel R. Davidson, deceased, were issued to Charles Davidson, a son, and one of the legatees, on April 2, 1884.

2. On June 9, 1884, an inventory and appraisement was filed in the office of the register of wills of the county, amounting to $245,136.82.

In this inventory were included:

| | |
|---|---:|
| 398 shares of the Pittsburg National Bank of Commerce at $131 per share . . . . | $52,138 |
| 75 shares of the Commercial National Bank at $106 per share . . . . . . | 7,950 |
| 104 shares of the South West Penn. Railway stock at $70 per share . . . . . | 7,280 |

3. In 1894, the executor filed a first partial account, in which he charged himself with "all and singular, the goods and chattels, rights and credits of said decedent, as shown by the inventory and appraisement filed June 9, 1894," amounting to $245,136.82.

4. In this first partial account the total assets of the estate are stated to be $551,041.53, and the executor claims a credit for services and expenses of $25,390.52, or five per cent of $507,810.

5. The executor filed a second partial account in which he charges himself with $32,878.33, the balance shown by the first partial account. The assets of the estate in this account, including the balance aforesaid, amount to $105,888.88.

6. In this account the executor claims credit for expenses $385.55; for cash paid W. A. McCool $50,000, and for services as executor $5,294.44. This charge for services is five per cent of $105,888.88.

7. The credit claimed for $50,000 paid W. A. McCool was for the purchase price paid for 500 shares of the Union Drawn Steel Company, in March, 1893, at $100 per share. At this time the attention of the executor was called to the stock as being a desirable investment by his brother James J. Davidson and J. F. Reed, Esq., and after an investigation his mother, Margaret Clark Davidson, joined with the others in asking that the investment be made. These shares were therefore bought with money belonging to the estate.

10. In 1901, the executor filed a third partial account, in which the total assets are $298,559, and claimed for services and expenses the sum of $14,627.95. This is five per cent of $292,559, the total assets less $6,100.

11. In 1902, the executor filed his final account, showing assets of the estate amounting to $194,185.66⅓. In this amount he charges himself with "all and singular the reversion or remainder due of the personal estate, and all the profits, income and advantage, remaining of the estate of decedent after the death of his wife, as per the inventory of appraisers," amounting to $166,511.33⅓.

12. The appraisement above-mentioned was made shortly before the filing of the account, by appraisers, appointed for that purpose, in order to comply with a provision in the last will of Daniel R. Davidson.

13. This inventory includes the 398 shares of the Pittsburg National Bank of Commerce, 75 shares of the Commercial National Bank, 104 shares of the South West Pennsylvania Railway stock, mentioned in finding of fact No. 2; also 75 shares of the Commercial National Bank, bought by the executor from his mother, Margaret C. Davidson, in 1896, with money belonging to the estate; 171 shares of the South West Pennsylvania Railway stock purchased by the executor with money belonging to the estate, and 227 shares obtained by stock dividends; also 500 shares of the Union Drawn Steel Company, purchased with money belonging to the estate, and mentioned in finding of fact No. 7, and 133 shares obtained by stock dividends.

14. In the final account the executor charges for services $4,000.

15. The executor had no official connections with the Commercial National Bank, the Pittsburg National Bank of Commerce, or the South West Pennsylvania Railway. He became a director of the Union Drawn Steel Company in the fall of 1895, and in January, 1897, became president. As an official of the company he had no regular time for being at the works; comes and goes at his convenience, sometimes once a week and sometimes once a month, and is paid for his time and expenses by the company. He resides in Connellsville, Pennsylvania, the plant and business office of the company is in Beaver Falls, Pennsylvania.

16. The active management of the Union Drawn Steel Company is looked after by others.

17. The executor was occupied, when attending to the business of the estate, principally in receiving and paying out money. These moneys were received by him for awhile at Pittsburg, but for some years later they were sent to him in the forms of dividends by checks at his home in Connellsville.

From these facts, found from the evidence, the auditor draws the following conclusions of fact:

1. That prior to settling his final account, the executor has charged and received commissions on 398 shares of the Pittsburg National Bank of Commerce, appraised at $52,138 ; 75 shares of the Commercial National Bank, $7,950, and 104 shares of the South West Pennyslvania Railway stock at $7,280, amounting to $67,568. These stocks are included in the item $196,511.33 in this account.

2. The 500 shares of the Union Drawn Steel Company's stock, included in the item $166,511.33 in the final account at $50,000, are assets of the estate in another form on which the executor has already received a commission.

3. The remaining shares of stock, making up this item $166,511.33 are an increase in the assets of the estate due to the business management of the companies in which the stock is held, and not to the business sagacity or responsibility of the executor.

4. That the other items in the account (except the sums received from Shaffer and Hough) are dividends accruing on the stock since the filing of the third partial account.

The auditor, in view of the foregoing findings of fact, makes the following conclusions of law :

1. That the executor is entitled to commissions upon $5,060, the amounts received from Nelson Shaffer and Philip Hough, said commissions amounting to $253; on the other items embraced in this account he is not entitled to commissions.

Exceptions to auditor's report were dismissed by the court.

*Error assigned* was in dismissing exceptions to auditor's report.

*J. F. Reed,* for appellant.

*John M. Buchanan* and *W. S. Moore*, for appellee.

PER CURIAM, January 5, 1903:

The auditor reported that there had been no litigation in the settlement of the estate, and that the main duty performed by the executor was the collection of the income from investments made by the decedent.   For these services he has already received over $45,000.   Some of the largest items in the account on which commissions were claimed were the result of appreciation in the value of stocks and other investments made with money on which commissions had been charged and allowed in a prior account.

These findings are practicallly undisputed, and they fully sustain the conclusion of the auditor that the accountant has received ample compensation.

The decree is affirmed.