## McCaskey's Estate.

Argued March 16, 1932.   Before FRAZER, C. J., SIMP-
SON, KEPHART, MAXEY, DREW and LINN, JJ.

*T. F. Ryan,* with him *Joseph H. Bialas,* of *Bialas,
Ryan, Irons & McIntyre,* for appellants.—On the resig-
nation of one of four substituted trustees of continuing
testamentary trusts, the orphans' court may not ignore

the expressed wishes of the beneficiaries and appoint a successor trustee without notice to them of the identity of the appointee and without affording them opportunity to make further suggestions: McCaskey's Est., 293 Pa. 497; Lafferty's Est., 198 Pa. 433; Slingluff's Est., 14 Pa. D. & C. 465.

One of the continuing trustees is such a party in interest whose petition will support the appointment.

There was no necessity for appointing a successor trustee.

*Edwin W. Smith,* with him *Harbaugh Miller,* for appellee, cited: Nixon's Est., 7 Phila. 505.

OPINION BY MR. JUSTICE SIMPSON, April 11, 1932:

When testator died he left an estate of about $3,000,000. He appointed four men of known business ability, residing in four different states, to be the trustees under his will, and to them letters testamentary were duly granted. One of them subsequently resigned, whereupon the other three, under an authority contained in the will, appointed his successor. Still later, these four resigned under circumstances stated in our opinion in 293 Pa. 497. Testator's children then petitioned the court for the appointment of four new trustees, and suggested the names of six representative professional and business men, of unquestioned ability and integrity, from which the court was asked to select four new trustees. It did not appoint any of them, however, but, suo motu, selected instead three other individuals and a bank. We reversed it for so doing: 293 Pa. 497.

On the return of the record, the court below, on the petition of the children, appointed four new trustees, selected or approved by them. Two were successful business men, one was a successful lawyer, and the fourth was a prosperous trust company. The new trustees entered into possession of the trust estate, and ad-

ministered it with conspicuous success for something over two years and four months, when the lawyer resigned and his resignation was accepted by the court. Following this, an account was filed by the trustees, in order that the affairs of the estate might be settled as of the date of the resignation. At one of the hearings, testator's children asked for the appointment of a named trustee, to take the place of the one who had resigned. He was approved by the surviving trustees, and the auditing judge stated "I will make some investigation and inquiry and let you know shortly." Doubtless his "investigation and inquiry" satisfied him the suggested appointment should not be made, for, at a later date, he refused to appoint the trustee suggested by the children, and, without letting them "know shortly," named, as the fourth trustee, a lawyer of his own selection, who was also later approved by the remaining trustees. The court in banc sustained this action of the auditing judge, and the five children then jointly prosecuted one of the present appeals.

In their exceptions below, and in their assignments of error upon this branch of the case, they raise two points: (1) That a fourth trustee was not needed; and (2) The appointment should not have been made without notice to them and an opportunity to suggest names from whom, if they were proper persons, the appointment should have been made. Appellants are hardly in position to raise the first point; they themselves suggested the appointment of a named person as fourth trustee, and cannot complain because the court followed their lead and appointed one. The second point is more serious, however. When the suggested new trustee, nominated by them, was approved by the other trustees and no one objected to him, they had a right to expect that they would "know shortly," as the auditing judge said they should, if the appointment was not to be made, and could then suggest other names; but no such oppor-

tunity was given to them. We think this antagonizes our earlier decision in this estate.

We there said (293 Pa. 501-2) : "It is admitted that for many years it had been the unbroken practice in Allegheny County, and, so far as we are aware, in every other county of the Commonwealth, for the orphans' court, when appointing substituted trustees, to select them from the nominees of the parties in interest, unless those proposed were not proper persons to be entrusted with the care of the estate. This is a wise practice, especially where, as here, the discharge of existing trustees is not also sought, though even in that event a removal will be decreed if the conduct of the trustees 'works disadvantage or great discomfort' to the beneficiaries: Marsden's Est., 166 Pa. 213; Neafie's Est., 199 Pa. 307; Myers's Est., 205 Pa. 413." After citing section 56 of the Fiduciaries Act of June 7, 1917, P. L. 447, 523, which is the section relating to this subject, we continued at page 505 : "It must not be supposed that what we have said reflects upon the auditing judge or the integrity of any of his appointees; or that some of the latter, if named by the parties in interest, may not be reappointed when the correct procedure is followed; or that the previous nominees of the sons, or any of them, must be appointed. What we decide is that the course pursued in making the present appointments was wrong. All the parties in interest, present and prospective, are entitled to suggest the names of those whom they prefer for trustees, and therefrom the court should select, if of opinion they are thoroughly fit, a sufficient number who are not unfriendly to the life tenants, and yet will not permit anything to interfere with their duty to preserve the principal intact for the benefit of the remaindermen. In making its selections and rejections from the lists presented by the parties in interest, the court is not obliged to place on record its reasons therefor; necessarily a large discretion must be vested in it, for not otherwise can there be a wise independent determination of the

question as to the persons or institutions best qualified to care for the estate, for the benefit not of some but of all the interests concerned. Any other conclusion than that above stated would not only antagonize the unbroken practice referred to, but might also result in the appointment of a trustee whom the judge believes to be personally competent, but whom the parties in interest not unreasonably view with doubt and suspicion."

We must, therefore, reverse the order appointing the substituted trustee. We do this with regret, since appellants' counsel expressly admit that he is a man of high character, well fitted to fill the office. Appellants' only objection to him is that they do not know him personally. As he is not unfriendly to them, this is not a serious objection; on the contrary, it may be a recommendation, since he will be able to fill the position without being hampered by personal considerations. Perhaps, on further thought and under the advice of their counsel, they will withdraw their objection. If they do not, the course outlined in the quotation above will have to be followed. No serious difficulty will arise therefrom. If appellants do not present a list of names on a reasonable notice so to do, or if, upon a careful and impartial consideration of those suggested, the court below finds it should not appoint any of them, upon it is cast the duty of selecting either the present appointee or some other person whom it knows is qualified.

On the adjudication of the account above referred to, which showed $39,407.82 of income collected by the executor and turned over to the trustees, and $291,702.03 of income collected by the trustees themselves, the auditing judge allowed the usual five per cent on the income collected, and a further sum of $5,874.20 to the resigning trustee and each of his colleagues, to be paid out of income on hand, for services rendered in conserving the estate. The court in banc sustained the allowance, and from the decree awarding payment of the items of $5,-874.20, each of the five children has taken one of the

present appeals. They raise four points: (1) That no allowance should be made out of the corpus of the trust until the final distribution thereof; (2) Even if such an allowance should be made to the trustee whose resignation was accepted, because his connection with the trust ended at that time, this furnishes no reason why the continuing trustees should be so compensated; (3) If any allowance is made it should be charged against principal and not income; and (4) In any event, the allowance made is excessive.

But little need be said regarding the last objection. There was ample satisfactory evidence to sustain the auditing judge as to the amount allowed, and this being approved by the court in banc, we but follow our usual rule in approving it: Culbertson's App., 301 Pa. 438; Clark's Est., 303 Pa. 538. That the percentage allowed is larger than usual is a matter of no moment, since it does not exceed adequate compensation. The other three points are more serious, but, since they do not embody rules of law, and only relate to the usual methods of practice, they cannot be allowed to become a means of working injustice, in a court which proceeds according to equitable principles, as the orphans' court does: Dundas's App., 64 Pa. 325; Lonergan's Est., 303 Pa. 147.

When testator made his will, he must have known that the trustees whom he named, because through the years they had finally succeeded in proving their business ability, in all human probability would not survive to the time when the last of his minor children would die. He must have known also that the successors of those trustees, except the last thereof, would have to be chosen from successful business men, of about the same age as those he named, in order to be qualified to manage his large estate, and hence they, too, would be unlikely to live until the trust ended. He also must have known that such men, their time and experience being more valuable than the ordinary run of men, probably

would not be willing to give thereof for the small amount which they would receive upon the income collected. Hence he must or should have known—even if he was aware of the general rule as to commissions on principal, upon which appellants now attempt to rely—that a commission on income would not be sufficient either to properly compensate them as trustees or to retain them in that office, and hence must have contemplated an allowance to them, from time to time, for the conservation and enhancement in value of the principal of the trust committed to their care. In point of fact this is exactly what did occur. Notwithstanding the stress of the times, the great losses by individuals, firms, large banks and trust companies, and large owners of and lenders on real estate, resulting in the failures which have multiplied in the business world during the last few years, this estate has suffered no losses, but, on the contrary, has increased in value. Like the court below, we have had no knowledge of similar successful individual management of so large an estate; and we agree that equity compels the giving of a commission commensurate with the results attained by such management. This being so, the third of the above objections is the only one which needs further consideration.

Was the commission allowed on the principal of the trust properly charged against accruing income? It may be conceded that ordinarily this would not be the course pursued, but the matter was primarily one for testator; and the court below found, from his will and codicil, that he intended such an allowance might be made. To fully review the eighteen pages of the record which their printing requires, would unduly lengthen this opinion, and hence we will quote only the important parts of it and the comments on it from the opinion of the auditing judge, which was approved by the court in banc, and is now approved by us. He says: "Testator's will discloses a clear intention to charge every kind of outlay to income and to preserve his principal until the

termination of the trusts which he established. By the codicil, the trustees, in their discretion, may from time to time pay the testator's two daughters any portion of their share from the principal when necessary, an advantage not given to the sons. ...... All other principal which may be paid by the trustees must be restored from income except that there is a discretionary power in the executor, which no longer exists, to use principal or income to repay any money he would be required to borrow, and another in the trustees who may pay indebtedness and interest thereon incurred by them for the trust and are authorized to use the income or principal in the repairs or restoration of property destroyed.

"By the will, testator directs payments of income from trusts established for his mother and mother-in-law, permits additional payments to them and charges them against income from the children's trusts; [which] in the residue is set aside for the use and benefit of his five children named, share and share alike, and to pay and apply the income arising from the trust fund and to pay the principal thereof as follows: 'To the payment of all taxes that may be assessed from time to time against any of the real or personal property belonging to the trust or against the transfer of any part of said property; to the repair and upkeep of any property belonging to the trust or to its restoration; to the payment of any and all premiums for the insuring of such property against loss by fire or other calamity; to the payment of any indebtedness incurred by the trustees in behalf of and for the account of the trust and interest thereon in case the trustees do not desire to pay such indebtedness out of the principal fund; to the payment of any sums of money my trustees may determine to make to my mother and my mother-in-law, or either of them, as above provided for; *and to pay any and all other costs, charges and expenses incurred in the management, control and administration of the trust whatever those costs, charges and expenses may be.*' Immediately following

this in the next clause he directs the trustees 'To pay the net available income in equal monthly installments to my said children share and share alike, each child to re-. ceive such income from the day of my death.' ......

"Testator has directed distribution of income by the trustees only after payment of all other costs, charges and expenses incurred in the management, control, and administration of the trust whatever its costs, charges, and expenses may be, and in his next breath says that the net available income shall be payable to his children share and share alike, each child to receive said income from the day of his death. This net income is to be paid until the 'whole' of the share shall be distributed 'as hereinafter provided' and the share is of the residue 'as a whole.' Compensation must surely have been in testator's mind when there is a direction to pay any and all other costs, charges, and expenses whatever incurred in the management, control, and administration of the trust and to pay only the net income to the children. Much emphasis is given to this point of view when the only exception made by the testator is that the trustees may repay their borrowings from income in case they 'do not desire to pay such indebtedness out of the principal fund.' Testator knew that he was wealthy and believed that his children's income would at all times be ample; that, as the minor trusts terminated to their benefit, the income would increase as the corpus increased, and he was concerned much, for he gave discretion to the trustees to defer or withhold payments of income if their judgment should be that this course should be to their interests. It is significant that there is not a thought of distributing anything but income until we reach the paragraph in the will......[where] the disposition of principal begins and the first division of it is made. It would be most difficult to find a will on record where a testator put more store on the word 'income' than this one. The more the will is read the more it is impressed upon us that the testator emphasizes his in-

tention that income must bear all possible charges to the exclusion of the principal. It seems to us, after a most careful examination of the will and careful conferences about its meaning, that none of testator's children could have any income except the excess over all proper administrative credits which, of course, must include compensation and counsel fees."

With this conclusion we agree and in relation to it need refer to but a few authorities. In Bosler's Est., 161 Pa. 457, so much relied on by appellants, it is said (page 462) that "In the case of a continuous trust, [compensation for]......the labor, care and responsibility pertaining to the conservation of the capital itself...... are to be deducted from it when the trust expires, or the particular trustee's relation to it ends." In Thouron's Est., 182 Pa. 126, 131, it is said that "The authorities, particularly Bosler's Est., 161 Pa. 457, and Mintzer's Est., 18 Phila. 98, recognize the exception of extraordinary circumstances to the operation of the general rule, and when to this is added the fact that the real capital of the fund will not be diminished by the allowance, and that the amount allowed can never be allowed again, all reason for enforcing the general rule disappears." It was there held that a particularly successful management of the trust, resulting in its enhancement in value, justified an allowance to "the trustee of $7,500 on account of commissions on the principal fund of the estate." The same facts appear here and the same conclusion should be and is reached.

After all, while what appellants rely on is the general rule, back of it and superseding it, wherever applicable, is the principle that "the rule regarding commissions to trustees is, in all cases, compensation" (Harrison's Est., 217 Pa. 207; Riter's Est., 260 Pa. 168, 173), and this is necessarily to be determined by the facts and circumstances of each case.

The order of the court below appointing a new trustee in the place of the one who resigned is reversed, and as

to this a procedendo is awarded; the decree of the court below determining the compensation to be paid to the trustees is affirmed, and the five appeals therefrom are dismissed at the cost of the estate.