## Mayo's Estate

*Lloyd W. Kennedy,* of *English, Quinn, Leemhuis & Tayntor,* for exceptants.

*Brooks, Curtze & Silin,* contra.

WAITE, P. J., January 25, 1935.—Henry Mayo died on September 30, 1906, having made his last will and testament, which was duly probated on October 4, 1906. Under the residuary clause, testator created a trust for Harry W. Mayo, and named the Erie Trust Company as trustee. The trust provides for payments in the sum of $50 per month to Harry W. Mayo from the income received and from such portion of the principal as may be necessary for that purpose.

The Erie Trust Company assumed its duty as trustee on October 31, 1906, when it received $100 on account of distribution. On May 9, 1907, said trustee received an additional sum of $11,401, and at various other dates from January 2, 1907, to January 3, 1910, the said trus-

tee received other payments on principal aggregating $985.74, making the total amount of principal received $12,486.74.

The account also shows periodical interest payments charged to the trustee from May 9, 1907, to January 1, 1934. The total income of the estate amounted to $15,-071.39, making the total amount received by the trustee, principal and interest, $27,557.13. Of this amount $8,000 is now invested in the mortgage pool hereinafter referred to, leaving a balance of $19,558.13, upon which the said trustee claims a commission of 5% amounting to $977.91.

All of these items are shown in the "First and Final Account of Wm. D. Gordon, Secretary of Banking, Commonwealth of Pennsylvania, Receiver of Erie Trust Company, Trustee for Harry W. Mayo under the will of Henry Mayo, deceased", filed May 8, 1934, almost 28 years after its assuming the responsibility of the trust. To this account, Edward A. Steinfurth, substituted trustee, in place of the Erie Trust Company, now in the process of liquidation, filed exceptions, which brings the matter before the court. The exceptions are as follows:

"1. That the compensation claimed is unreasonable.

"2. That the Statute of Limitations bars compensation on income collected prior to 6 years before the filing of the account.

"3. That the trustee was negligent for not keeping continuously invested all of the funds at 6 percent.

"4. That because the trustee failed to file triennial accounts, it has forfeited its right to any commission."

The second exception is to the effect that the statute of limitations bars all compensation on income prior to the 6 years immediately before the date of the filing of this account. With this we agree.

In Arata's Estate, 7 D. & C. 135, it is held that the statute of limitations operates as a bar to commissions on income paid more than 6 years before the accounting,

the relationship of the parties becomes quoad the amount so paid merely that of debtor and creditor.

The same rule applies here and the second exception is therefore sustained.

The failure of the trustee to file triennial accounts within the said 6-year period would not in our opinion forfeit its right to commission as trustee during said period.

The fourth exception is therefore dismissed.

It is urged on behalf of the exceptants that said trustee should be surcharged because of the fact that a large part of the principal, at times over $5,000, was allowed to remain in the bank uninvested. But it is also shown that the bank paid 4 percent interest on all such uninvested balances. Had these funds been invested in government or municipal bonds, which are legal investments' for trust funds, the returns might not have been so large.

The third exception is therefore dismissed.

The account shows that after all payments have been made to Harry W. Mayo, not only the entire income but also $4,357.27 of the principal was used ($1,000 of this amount having been paid to Mildred Mayo when she became 21 years of age, as also provided by the will), and that the balance of $8,129.47, as shown by the account, consisting of $129.47 cash and $8,000 mortgage participation is all principal.

The account also shows that prior to January 1, 1926, perhaps 1 year before, judging from the amount of interest credited to that date, the Erie Trust Company invested $8,000 of the principal of this fund in a mortgage participation and later in a participation in a mortgage pool. This participation in the mortgage pool, now known as the Erie Trust Company Mortgage Pool, was not created until June 30, 1928, and it is assumed that the mortgage participation above referred to became a part of the pool on that date.

The management of the Erie Trust Company Mortgage Pool was fully discussed by this court, sitting en banc with the court of common pleas, in an opinion handed down on January 16, 1935, and filed to no. 102, November term, 1933, in the court of common pleas and to special order no. 30 in the orphans' court.

In view of the default of the Erie Trust Company as therein set forth, the court is of the opinion that no commission should be allowed on its investment in the mortgage pool, and that the estate should not be made to suffer by reason of the fact that the said Erie Trust Company is unable to continue as trustee.

The general rule is that a fiduciary who has been unfaithful or who has mismanaged his trust will be denied all compensation and will be surcharged for any loss sustained: Kline's Estate, 280 Pa. 41.

Were this rule to be rigidly applied in the instant case, the accountant would not only be denied all compensation but would also be surcharged. A surcharge at this time would be of no avail as there seems little prospect that the receiver for the Erie Trust Company will have funds which a surcharge would reach. For the reasons hereinafter stated, we do not think the above stated general rule as to all compensation should be strictly adhered to in the instant case.

In Millman's Estate, 111 Pa. Superior Ct. 519, it is held that whether a corporate trustee, upon surrender of a trust, or upon termination thereof, is entitled to commission depends upon the particular circumstances in each case. See also McCaskey's Estate, 307 Pa. 172; Mylin's Estate, 32 Pa. Superior Ct. 504.

It will be noted that in Millman's Estate, the trustee performed his duty faithfully for 15 years without default and without loss to the estate, while in the instant case there has been default as set forth in the above referred to opinion and that there may, and probably will

be, a further loss to the estate on account of the investment of part of the principal in the said mortgage pool.

No commission will be allowed on the investment in the mortgage pool.

Notwithstanding the default above referred to, in view of the facts that the said Erie Trust Company as trustee had carried on this trust faithfully for many years, and that its present financial condition and inability to carry on may be, at least in part, due to the period of economic depression and uncertainity through which we are passing as well as the mismanagement by the trustee, and in fairness to the depositors, it should not, in our opinion, be denied all compensation. The court will, therefore, allow said trustees a commission of 2½ percent on the income of the estate from January 1, 1928, to January 1, 1934 (6 years), that is 2½ percent of $3,170.09, which is $79.25.

As there has been no default in the management of the principal not invested in the mortgage pool and in consideration of the other circumstances above referred to, we feel that said trustee should also be allowed commission on the remaining principal.

To arrive at a fair compensation on that part of the principal not invested in the mortgage pool, we must take into consideration the whole time that the trust is to operate. This trust was created in the year 1906. At the present time, which is 28 years after its creation, the approximate age of the cestui que trust is 65 years, and as stated by the counsel for the accountant, the trust has probably operated one half or more of the whole period which it is likely to cover.

Fixing the whole amount of the commissions on the corpus of this estate to be paid at the expiration of the trust at 5 percent and assuming that the trust is one half completed, we will allow the Erie Trust Company for its services, a commission of 2½ percent on that part of the

corpus of this estate, not invested in the mortgage pool, that is 2½ percent on $4,486.74 or $112.17.

As the greater part of the estate is now invested in said mortgage pool, the compensation herein allowed should in fairness to the trust estate be secured in the same manner as the balance of the estate, that is by an assignment to said trustee of an amount equal to its commissions in said participation certificate belonging to this estate.

This disposes of the first and fourth exceptions above referred to.

And now, to wit, January 25, 1935, exceptions one and two are sustained, and exceptions three and four are dismissed. The question of a surcharge on any loss which might be sustained on account of investment in the mortgage pool may be determined if and when it may appear that there are assets available for that purpose. In all other respects the account is confirmed absolutely, and the Secretary of Banking, Commonwealth of Pennsylvania, receiver of the Erie Trust Company, is directed to turn over to Edward Steinfurth, substituted trustee, the entire balance of cash as shown by said account, as well as the mortgage participation certificate or some evidence of ownership thereof. Edward Steinfurth is to be in no way liable for any loss by reason of the investment made by the Erie Trust Company in the mortgage pool.

F. B. Quinn and E. C. Filer, trustees appointed to liquidate the Erie Trust Company Mortgage Pool, are directed to assign to the Secretary of Banking, Commonwealth of Pennsylvania, receiver of the Erie Trust Company, an interest in the participation certificate in the sum of $191.42, the full amount of commission allowed, and to assign the balance of the participation certificate in the sum of $7,808.58, to Edward Steinfurth, substituted trustee.