# Hollins' Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ., and Marx, P. J., twenty-third judicial district.

312

*Gordon A. Block,* of *Wolf, Block, Schorr & Solis-Cohen,* and *Harry Rosenbloom,* for accountant (exceptant).

*Paul Freeman,* of *Freeman, Fox & Steeble,* for beneficiary (exceptant).

LADNER, J., May 28, 1937.—The adjudication recites the relevant facts so as to obviate the necessity of their repetition. Both accountant and the beneficiary who excepted to the account have filed exceptions, which will be considered separately.

316

*Exceptions of accountant*

The exceptions of accountant raise four questions. The first is whether the auditing judge erred in his finding accountant guilty of supine negligence in failing to collect the amount of taxes for the years 1925 to 1934, inclusive, on real estate in which the trust had a one-half interest, said taxes being payable under the lease by the tenant as additional rent, and in surcharging accountant to the extent of the trust estate's proportionate loss.

We must regard the fact findings of the auditing judge as equivalent to the verdict of a jury: Chabrow's Estate, 22 D. & C. 481, 484, Klein, J. As a review of the record shows the findings of the auditing judge to be based on adequate competent evidence, we will not disturb them. We likewise agree with his conclusions of law as being well within the rules laid down in Chabrow's Estate, supra. We also agree with his construction of clause 37 of the lease, viz., that the words "lessee shall and will pay as additional rent all taxes and water rents which shall be assessed or become chargeable during the term of this lease as same becomes due and payable" mean that the trustee should have paid the taxes and collected the amount equivalent thereto from the tenant as rent.

The able argument of learned counsel for accountant and an examination of the authorities cited by him has left us unconvinced that the auditing judge erred. Covenants in leases in this State to pay taxes or other charges fall into two classes: those in which the language of the lease merely imposes a duty upon the tenant to pay such charges: See Evans, Trustee, v. Lincoln Co., 204 Pa. 448, 452; and those in which the tenant is required to pay such charges as additional rent. In the former class the charges are construed to be personal covenants, and not rent, having none of the incidents of rent. In the latter, charges are a part of the rent and as such have all of the incidents thereof: See Morgan's Estate, 30 W. N. C. 509, where Judge Hanna of this court, construing a

clause substantially similar to that before us, held the landlord to be entitled to priority against a deceased tenant's estate for the amount of taxes so payable. In the case of McCann v. Evans, 185 Fed. 93, Judge Gray, after a review of the Pennsylvania cases, made the same distinction, and holds when taxes are required to be paid as additional rent the sum thus due may be distrained for and treated as a priority rent claim in bankruptcy proceedings.

Since the provision in the lease before us makes the amount of taxes part of the rent, it follows logically that it was as much the duty of the trustee to have collected from the tenant that part of the rent measured by the amount of assessed taxes as it was the rest of the rent. Had she done so, she would have paid the taxes herself and there could have been no loss. Instead she chose the easier course of delegating to the tenant her duty to pay the taxes and accepted his assurance that he had done so when in fact he had not. Subsequent events occurring resulted from her shirking her plain duty. We agree with the auditing judge that this is supine negligence. The expression "supine negligence", though frequently used in the cases, is infrequently defined. The term is not to be confused with "gross negligence", which is negligence of the highest degree. "Supine", as pointed out in the Oxford Dictionary, carries with it the thought of passiveness and inaction rather than active wrongdoing. It means dereliction and inattentiveness to duty; literally, "lying down".

As a further indication of this inattentiveness to responsibility, the auditing judge very properly mentioned her failure to take possession of the forged tax receipts, though as owner she was undoubtedly entitled to keep them. Her position was not that of a mortgagee who may merely demand the production of paid tax receipts; by allowing the tenant to retain the forged tax receipts she enabled him to avoid possible prosecution under the forgery statute: See Act of March 31, 1860, P. L. 382, 18 PS §3631; Commonwealth v. Leib, 4 Northum. 395.

We therefore approve the action of the auditing judge in imposing the surcharge in this regard.

The second question raised by accountant's exceptions is whether the auditing judge erred in surcharging accountant with the duplicate charges of five percent commissions on that part of the rent in 1935 collected by an agent. Ordinarily, where a fiduciary because of a large number of properties is compelled to employ a real estate agent to collect rents and pays him the usual commissions of five percent, we have allowed the fiduciary a reasonable compensation, from two to three percent in addition thereto, for his responsibility in receiving the rent from the agent and making proper distribution: See Milnamow's Estate, 18 Dist. R. 778, Dallett, J.; Wickersham's Estate, 30 Dist. R. 145, Thompson, J.; Goldbeck's Estate, 17 Dist. R. 373, Lamorelle, J. Here, however, the trustee designated the Provident Trust Company as her agent not only to collect rents of this one property but to pay the taxes and other proper charges out of rent and even distribute the balance direct to the parties entitled. Nothing was left for the trustee to do.

The allowance of a fiduciary's commission is primarily within the discretion of the auditing judge, whose action will not be disturbed except for clear error: Redmond's Estate, 21 D. & C. 497, Sinkler, J. We find no such clear error here, and accordingly will not disturb the surcharge thus made by the auditing judge, nor his similar action with regard to the item of $245 paid B. Friedman for services as manager during such year.

The third question raised by accountant is as to the action of the auditing judge in allowing her but one half of the counsel fees charged for services in collecting, so far as possible, from the tenant the amount of taxes which should have been paid by him as part of the rent. The auditing judge has very properly pointed out that these services were in part necessitated by the trustee's own neglect. We think that his surcharging her with one half of the

counsel fees for this reason was an equitable disposition of the matter which we do not feel called upon to disturb.

Finally, the auditing judge is charged with error in surcharging the trustee with two items, in the amounts of $638.25 and $563.70, respectively, for interest on loan made by accountant to pay delinquent taxes; also with the item one half of the prothonotary's fees for satisfying tax liens, $75.18, as well as the item David Brook, constable, in attachment, $250. These expenditures, resulting as they do from the neglect of the trustee, were proper surcharges.

In his brief counsel for accountant questioned the correctness of the auditing judge's action in admitting in evidence a copy of a letter dated December 14, 1932, addressed by counsel for the beneficiary to the trustee. As none of the exceptions raises this question we cannot review the ruling as made.

### Exceptions of the beneficiary

Exceptions filed on behalf of the beneficiary also raise four questions for our consideration.

The first is whether the auditing judge erred in apportioning the tax surcharge for the year 1934 to August 1st of that year, when the tenant was evicted.

Counsel for the excepting beneficiary argues that taxes become due to the city on the first day of the year, in advance. This is not entirely correct because, though the taxes are assessed on the first day of the year, they are customarily not regarded as due and payable until the day when penalties for nonpayment are imposed, viz., the first of July: See Bennett's Estate et al. v. Sproul, 42 F.(2d) 33 (1930), where Judge Buffington held that the meaning of the words "when due" in a tax clause of a lease means when the taxes become delinquent.

Clause 37 of the lease, upon which counsel must base his claim, reads as follows:

"Lessee shall and will pay as additional rent all taxes and water rents which shall be assessed or become charge-

able to the demised premises during the term of this lease when and as same become due and payable. Taxes and water rents for the first and last year of the term of this lease shall be apportioned."

The last sentence of the clause indicates that the parties had in mind that when the term came to an end the taxes, being payable as rent, should be apportioned like rent: Trickett on Landlord and Tenant (2d ed.) sec. 255. Under the circumstances, we believe that the auditing judge's disposition of the question was just and equitable. Moreover, in view of the rule that the amount of surcharge is peculiarly within an auditing judge's discretion, we uphold his action for we find no abuse of his discretion.

The second question raised by the beneficiary's exceptions is whether the auditing judge erred in crediting, against the surcharge for unpaid taxes, one half of the value of certain securities held in escrow to guarantee compliance by the tenant with the terms of the lease.

We understand the relevant facts pertinent to this question to be that $20,000 worth of liberty bonds were deposited with the Land Title & Trust Company as escrow agent under a written agreement that the same was to be held as security for the performance of all the terms of the lease. The lease was for a period of 20 years, expiring on April 30, 1940. Reduction in rent was allowed the tenant for the years 1932, 1933, and 1934. In July 1934, when the deceit of the tenant with respect to the nonpayment of taxes became apparent, the trustee and the co-owners of the real estate took action against the tenant and terminated his lease as of August 1, 1934. Thereafter the trustee collected rent from the subtenants, and afterwards leased the premises to a new tenant at a less rent.

It is claimed by the excepting beneficiary's counsel that there were, aside from the tax loss, two large items of loss due to the default of the tenant, as to the covenants of his 20-year lease: (*a*) The loss resulting from the rent reduction, which is calculated by counsel to be $17,844.86; (*b*) the loss resulting from the difference between the amount

of rent for the balance of the term under the old lease and that payable by the new tenant under the new lease. This counsel calculates to be $22,500.

The learned counsel for exceptant argues with some force that the $20,000 worth of liberty bonds deposited to insure performance of the covenants of the lease must be regarded as just as much security for these rent losses as for the tax loss. We do not deny the logic of his contention, but other factors come into consideration which prevent us from accepting his conclusion.

1. As to the rent loss resulting from the reduction of the rent, item of $17,844.86, the evidence shows that this reduction was made with the full knowledge and consent of the beneficiary, and she cannot therefore now complain. The amount of the rent reduction agreed to by the landlord could not be collected from the tenant as rent in arrear, and consequently could not be demanded out of the security.

2. As to the other rent loss, $22,500, the situation is perhaps more serious, but we are equally clear that it cannot be sustained. The record shows that the tenant did not voluntarily abandon the property, but on the contrary the lease was terminated by the landlord because of the tenant's default. The landlord's remedy under the two situations is not the same. Where a tenant abandons leased premises and a surrender of his term is not accepted, the landlord can notify him that he proposes to relet the premises for the balance of the term for the account of the defaulting tenant. When this is done the landlord may hold the tenant in damages for the loss, which is measured by the difference of the rent reserved in the defaulting tenant's lease and that of a new lease. His suit in such a case is in a distinct affirmance of the lease.

But where the landlord elects to forfeit a lease, whether because of a tenant's default or otherwise, ousts him from the premises, resumes possession, and rents to a new tenant, as was done here, he cannot claim loss for the differ-

ence in the rent. This because when a tenant defaults in his lease the landlord has two options, one to hold the tenant to the lease and enforce its terms, and the other to declare a termination of the lease for the breach and oust him from possession: See Pusey v. Sipps, 56 Pa. Superior Ct. 121 (1914), and Grakelow v. Kidder, 95 Pa. Superior Ct. 250 (1929). The remedies and consequences are entirely different. If the second course is pursued, all rights under the lease are at an end, and it follows that under such circumstances the difference between the rent under the old lease and the new is no longer the measure of damages: Wolf v. Guffey, 161 Pa. 276. Of course, where a defaulting tenant is permitted to remain in posession and the landlord does not declare a forfeiture of the lease but elects to sue for whole rent for the balance of the term under an acceleration clause he may sustain his action: See Purvis v. Dempsey, 238 Pa. 173. He cannot, however, oust the tenant and at the same time hold him for the rent for the balance of the term, for such remedies are inconsistent: Greco v. Woodlawn Furniture Co., 99 Pa. Superior Ct. 290 (1930).

Applying these principles to the situation before us, we rule that the security deposited could not, after the lease had been terminated by the landlord's own action, have been held for the rent loss arising in the future. It follows, therefore, that the auditing judge correctly credited the security to the tax loss surcharge.

There is a further ground upon which the action of the auditing judge could be sustained. Under the expressed terms of the escrow agreement the escrow agent was forbidden to apply the proceeds of the liberty bonds to any loss claimed to have been suffered by the landlord because of tenant's default, unless the tenant agreed to the same. If the tenant refused to agree the escrow agent was bound to continue to hold the deposited bonds until the "matter in dispute shall have been adjudicated by legal process". The record shows that the trustee upon discovery of the tenant's deceit made demand in writing

upon escrow agent for the delivery to her of the liberty bonds, but that the tenant objected in writing to such delivery, and that the escrow agent then refused to deliver the same. In the meanwhile, distress proceedings had been begun and litigation had ensued. The matter was finally adjusted by an agreement under which the bonds were to be delivered to the owners of the property in payment of the tax liability. The distress proceedings were settled for the sum of $3,000 more. It may be that the compromise thus agreed to in view of later developments was not the wisest. On the other hand, the possibility of tying up the bonds by long litigation under the terms of the escrow agreement is obvious. Be that as it may, the owners of one half of the real estate and the trustee of the other half, on the one part, and the tenant, on the other, did compromise. The terms of this compromise required the landlord to apply the bonds to the tax liability. The auditing judge, therefore, upon the record before him, was bound to credit the bonds so received to the tax surcharge. Under either view of the matter we find no error in the disposition the auditing judge made of this question and decline to sustain the exception thereto.

The third question raised by the beneficiary's counsel goes to the action of the auditing judge in surcharging the trustee with but one half of the counsel fees for services rendered in connection with the tenant's default and to save the trust estate from further loss.

It is noted that accountant excepted because the auditing judge surcharged as to one half of these fees, and the beneficiary objects because he did not surcharge as to the whole of the fees. It is reasonably clear that the services in part inured to the benefit of the estate and in part to the benefit of the trustee. Under the circumstances, we believe the auditing judge has made an equitable disposition of the matter: Gandolfo's Estate, 17 D. & C. 701, Stearne, J. After all, the allowance of fees under such circumstances is largely a matter within the sound discretion of the auditing judge, rather than for

the reviewing tribunal: Wood's Estate, 272 Pa. 8; Mitchell's Estate, 21 D. & C. 225, Stearne, J.; Bergdoll's Estate, 25 Dist. R. 102, Gest, J. We therefore decline to sustain the exception raising this question.

The final question raised by the beneficiary is whether the auditing judge erred in not refusing accountant commissions, in view of the finding that she was guilty of supine negligence.

We have heretofore pointed out, and we repeat, that the allowance of fiduciary's commissions is primarily within the discretion of the auditing judge, whose action will not be disturbed except for clear error: Redmond's Estate, 21 D. & C. 497 (1934). On the other hand, it is true that, where a trustee has been surcharged, commissions may be refused, and that has been frequently done in cases where a fiduciary has been found guilty of deliberate fraud or gross negligence, and may perhaps also in a proper case be refused where guilty of supine negligence; but, as pointed out by Mr. Justice Simpson in McCaskey's Estate, 307 Pa. 172, 178, the "usual methods of practice . . . cannot be allowed to become a means of working injustice, in a court which proceeds according to equitable principles, as the orphans' court does", and (p. 182) "back of [the general rule] and superseding it, wherever applicable, is the principle that 'the rule regarding commissions to trustees is, in all cases, compensation.'"

In the case before us, we point out that the trustee rendered presumably satisfactory services from the date of her appointment in 1917 to the end of 1924, up to which time there was no default in taxes. Her dereliction began in 1925 and lasted until 1934. We are unwilling to say that under those circumstances, and in the absence of deliberate misconduct, she should be denied her commissions entirely. Yet we feel that the allowance of the full five percent commissions during the period when she rendered inefficient services is hardly justifiable. Five percent in the absence of special services is the maximum which we customarily allow to a trustee who has rendered faithful and

efficient services. It appears to us that since the services rendered by her from 1925 to 1934 were neither satisfactory nor efficient they do not warrant allowance to her of commissions of the maximum percentage for proper services. We have consulted with the auditing judge, who agrees with our views and consents to a modification of his adjudication by which the amount allowed for commissions shall be reduced to a sum equal to 2½ percent on the income during the nine years for which she was surcharged with the tax loss. In so doing we are not wholly without precedent: See Mayo's Estate, 23 D. & C. 299 (1935), where Judge Waite of Erie County made a similar disposition of a trustee's commission.

All of the exceptions of accountant are dismissed. Exceptions 1, 2, 3, 4, and 5 of the excepting beneficiary are dismissed. The third exception is sustained in part and the adjudication, the auditing judge consenting, is modified so as to surcharge accountant with half of the commissions on the income received from January 1, 1925, until August 1, 1934. As thus modified the adjudication is confirmed absolutely.