Miller's Estate.

Submitted May 5, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

A. R. Osmer and N. F. Osmer, for appellant.

Louis J. Wiesen, J. Villard Frampton and James H. Courtney, of Frampton & Courtney, for appellee.

PER CURIAM, September 28, 1938:

This is an appeal by the administrator of the estate of Mendal B. Miller, deceased, from an order of an orphans' court confirming the report of an auditor appointed to pass upon exceptions to the first and final account of the administrator where the auditor surcharged the administrator.

There were a number of exceptions filed to the administrator's account and considerable testimony was taken, resulting in three surcharges against the administrator. The auditor's report was confirmed by the orphans' court after the correction of a small mathematical error now of no importance, and the administrator has appealed to this court. The appellant now questions only one of the surcharges. Its statement of the question involved and its assignments of error present two matters for our consideration, both concerning the commission allowed the administrator for services.

It is contended first that the orphans' court erred in reducing accountant's compensation, and second that by reason of a mathematical error made by the auditor and repeated by the orphans' court the administrator was unintentionally deprived of all compensation. One assignment of error raises a question of law and the others a problem in mathematics and accounting.

The account filed by the administrator showed disbursements in excess of receipts in the sum of $3,983.05, due to improper advances made to decedent's widow and daughter. The administrator claimed as commissions $4,347.75, or five per cent of the original appraised value of the personal estate, while the auditor and the orphans' court allowed on that account only $2,169.75. We are all of the opinion that, under the circumstances shown, the court did not abuse its discretion in fixing the compensation, but it is most apparent that by the calculations made the administrator was not only deprived of all compensation but was unintentionally required to bear an additional loss. It will require a statement of the facts in some detail that we may make clear the reasons for our conclusions.

Mendal B. Miller died on November 3, 1930, and the Franklin Trust Company was appointed administrator of his estate. The inventory and appraisement filed showed total assets of $81,338.39 and there were debts, exclusive of administration and funeral expenses of about $40,000, leaving a net personal estate at that time of about $41,000. The personal assets consisted almost exclusively of stocks of corporations, principally the common stock of the Lone Star Gas Corporation. The stocks were not sold promptly and when the account of the administrator was filed in 1935 it showed that there were not sufficient assets to pay the unsecured debts. In other words, the estate was then insolvent.

The debts of the decedent at the time of his death consisted of notes to the McDowell National Bank, of

Sharon, aggregating $38,224.25, on which there were pledged as collateral security stocks having an inventory value at the date of decedent's death of $60,550, notes held by the Franklin Trust Company, of Franklin, aggregating $1,528, and small personal bills amounting to about $146. The stock of the Lone Star Gas Corporation was selling at $25 per share when the inventory and appraisement was filed. Prior thereto the stock had sold at a much higher price. After January, 1931, that stock continued to decrease in value and by July 9, 1932, had depreciated to $3.50 per share. As the collateral on the McDowell Bank note shrank in value, the administrator deposited with that bank additional stock as collateral. Some Lone Star stock was sold in October and December, 1931, and in October, 1932, for an average of $10.50 per share, and a larger amount was sold in December, 1933, at 5 5/8 dollars per share.

The widow and daughter of decedent, within ten days after letters of administration were issued, requested the administrator in writing to not then dispose of the stocks and relieved it from all liability that might occur by reason of the decline in the value of the stocks. The McDowell Bank, by the terms of the pledge of collateral, had the power to dispose of the collateral held by it but was under no duty to sell collateral upon the request or order of the debtor-pledgor: *Gordon v. Mitchell,* 320 Pa. 277, 182 A. 386. As all creditors except the McDowell Bank and the Franklin Trust Company have been paid in full, the only parties interested in the estate at this time are the two banks and the wife and daughter of decedent, the McDowell Bank alone appearing as appellee.

(1) "The rule as to commissions in all cases is compensation for the responsibility incurred and the service and labor performed": *Harrison's Estate,* 217 Pa. 207, 209, 66 A. 354; *McCaskey's Estate,* 307 Pa. 172,

160 A. 707. "Whilst a percentage is constantly spoken of and used because of its convenience, yet, it is compensation, nothing more or less, that is steadily kept in view": *Montgomery's Appeal,* 86 Pa. 230, 235. The rule as applied by the appellate courts and the orphans' courts throughout the state is to allow commissions on the appraised value of the corpus at the time when it reaches the hands of the executor or administrator. "This is the value of the assets actually administered. Subsequent accretions should not increase the allowance of compensation, nor losses reduce it, unless *exceptional circumstances* in fairness require that this be done": *Gardner's Estate,* 323 Pa. 229, 239, 185 A. 804. (Italics supplied.)

Taking into consideration that the rule is to allow compensation only and the "exceptional circumstances" present here, we think the auditor and orphans' court treated the administrator fairly in this respect. Some of these circumstances were that while the heirs relieved the administrator from liability by reason of depreciation in value of the stocks, they entrusted the matter to the judgment of the administrator and the stocks were allowed to depreciate in value without sales until a $40,000 estate was gone and it became insolvent by several thousand dollars. We do not mean to intimate that the court below erred in refusing a surcharge for such loss, but the matter was entitled to some consideration in fixing the commission to be paid for the services actually rendered. At the time of the decedent's death the stock on which most of the losses were incurred was in the hands of the McDowell Bank and never actually came into the possession of the administrator. A fiduciary is compensated, as we have seen, not only for the work done but for the risk incurred and the heirs here relieved the administrator of a considerable responsibility. The administrator used its influence to deter the McDowell Bank from selling the securities at a price

which would have at least avoided insolvency. The administrator, by advancing money to the heirs and making distribution before the estate was liquidated, made the audit and subsequent filing of extensive exceptions necessary. The auditor surcharged the administrator with other items in the account to which it is not now objecting. We feel that the allowance to the administrator for the services actually performed and the risk incurred was under the circumstances fair and reasonable.

(2) We will next consider the claim of the appellant that the orphans' court by its final decree in fact deprived the accountant, although unintentionally, of all compensation. This not only occurred but the accountant, if the order is allowed to stand, would be compelled to bear an additional loss, as we shall show. In our discussion we will, for convenience, refer directly to the auditor's report, since it was confirmed by the orphans' court.

The auditor summarized his surcharges as follows:

| | |
|---|---:|
| Note to The Franklin Trust Company .... | $ 265.50 |
| Note to The Franklin Trust Company .... | 1,262.50 |
| Administrator's fee reduced ............ | 2,178.00 |
| Advancements to heirs ................. | 3,983.05 |
| | $7,689.05 |

The auditor then, apparently assuming that by these surcharges there was provided an additional sum of $7,689.05 for distribution, proceeded by a short cut, with the usual result. He deducted from this sum the expenses of the audit and then prorated the balance between the claim of the Franklin Trust Company on its unsecured note and the claim of the McDowell Bank for the balance due it after the sale of the collateral it held. This was a clear error in accounting. The administrator had shown in its account that it had distributed $3,983.05 in excess of its receipts or charges. In

was shown by testimony that no part of the administrator's commission had been in fact paid. The result of the method adopted by the auditor was to surcharge the accountant with not only $7,689.05, but also with the amount by which its disbursements exceeded its receipts. Not only so, but the auditor in this summary substituted the excess disbursements shown by the account for the amount paid to the heirs, which was in fact $3,833.13. In addition, the auditor had not intended to surcharge the bank with the full amount of the note paid to itself but only with the excess above its pro rata share, a sum which could only be determined by an orderly distribution by the accountant. The percentage to which the unsecured creditors were entitled could not be determined in that manner since the proper base was not used.

The auditor should have restated the account in summary form, correcting the account in accordance with his findings, and thus determined the amount payable to all unsecured creditors. To do so the auditor should have charged the accountant with the debits shown by its account; then there should have been deducted from that amount the loss on sales, widow's exemption, taxes, administration expense, including expense of audit, sales of collateral by the McDowell Bank, and other preferred claims such as funeral expenses, eliminating from the calculation the advances to heirs and payments on account of unsecured claims not entitled to a preference. In addition, there should have been deducted the payment of interest to the McDowell Bank, at least to the extent of the dividends, cash and stock, paid on the collateral held by the McDowell Bank while so held (*Peoples-Pittsburgh Trust Co. v. Saupp,* 320 Pa. 138, 182 A. 376). The balance would show the amount to be distributed to all unsecured creditors not preferred. This sum should then be distributed in ac-

cord with the new rule announced in the *United Security Trust Company Case,* 321 Pa. 276, 184 A. 106.

The error in method may be more readily seen if we assume that the only surcharge had been on account of advances to the heirs when they were not entitled to receive anything. If the auditor had eliminated that credit from the account the estate would still have been insolvent by about $150. Consequently, there would have been still, nothing to distribute. Yet this very item was in fact distributed by the auditor.

If the interested parties will follow the usual procedure, as we have done for the purpose of testing the accuracy of our conclusions, it will be readily seen that the effect of the short cut adopted by the auditor and orphans' court was not only to deprive the administrator of all allowance for commission, but to impose on it an additional loss not intended.

The decree of the orphans' court is reversed, and the record is remitted to the court below to the end that the account may be restated in harmony with this opinion, each party to pay its own costs on this appeal.