## Reynolds' Estate

*S. Augustus Davis*, for accountant.

*James K. Peck*, for exceptant.

MURPHY, P. J., February 3, 1947.—This matter is before the court on exception to commissions claimed by the executor. The inventory in the above-entitled

case was filed October 10, 1944, in which 499 shares of Reynolds Brothers of Scranton stock at 30 (common) were valued at $14,970. In the first and final account of the executor, filed and confirmed nisi on November 12, 1946, said shares were valued at $22,455. On November 12, 1946, exceptions to the first and final account were filed by Arthur J. Reese, a person in interest under the will of David M. Reynolds, deceased, and exceptions were taken only to executor's commissions on $7,485 or $374.25. The $7,485 represents the difference between the value of said shares as listed in the previously mentioned inventory and the higher value as set out in executor's first and final account.

The first and final account reveals the following:

| | |
|---|---:|
| Amount of the inventory | $100,839.50 |
| Principal gain during administration | 39,648.97 |
| Ordinary income | 12,978.37 |
| Total (evidencing a gain in excess of 50 percent, including both the principal gain and income) | $153,466.84 |
| Expense of administration, including executor's commission, attorney's fee, State, Federal and real estate taxes | 21,424.18 |
| Expense charged to income | 2,853.08 |
| Distribution for decedent's widow, life tenant | 4,169.37 |
| Total cost of administration | $ 28,446.63 |
| Principal and income as above | 153,466.84 |
| Expenses and distribution to life tenant as above | 28,446.63 |
| Distributable to heirs other than life tenant | $125,020.21 |
| Inventory | 100,839.50 |
| Net gain for legatees | $ 24,180.71 |

The Supreme Court of Pennsylvania in Gardner's Estate, 323 Pa. 229, 238, 239, held:

" 'The rule as to commissions in all cases is compensation for the responsibility incurred and the service and labor performed': Harrison's Est., 217 Pa. 207, 209, 66 A. 354; Wistar's Est., 192 Pa. 289, 298, 43 A. 1006; McCaskey's Est., 307 Pa. 172, 160 A. 707. Where compensation is assessed as a percentage of total assets administered, the rule, as we have applied it and as customarily applied in the Orphans' Courts throughout the State, is to allow commissions on the appraised value of the corpus at the time when it reaches the hands of the executor or administrator. This is the value of the assets actually administered. Subsequent accretions should not increase the allowance of compensation, nor losses reduce it, unless exceptional circumstances in fairness require that this be done: See Davidson's Est. (No. 1), 204 Pa. 381, 54 A. 273; Riter's Est., 260 Pa. 168, 103 A. 554. There may be instances where the fiduciary's management of the estate has been so exceptionally skillful, and the care and attention bestowed upon it reveal the exercise of such unusually good judgment, and results in augmenting the estate beyond reasonable expectation, that it would be proper to allow commissions on an increase in corpus: Semple's Est., 189 Pa. 385, 42 A. 28."

In the instant case the account shows the amount of work involved in the settlement of the estate, and also shows the quality of the work done by the executor. It evidences that the management of the estate has been exceptionally skillful and the executor exercised unusually good judgment.

The Superior Court of Pennsylvania in Miller's Estate, 132 Pa. Superior Ct. 437, 440, 441, held:

" " 'The rule as to commissions in all cases is compensation for the responsibility incurred and the service

and labor performed': Harrison's Estate, 217 Pa. 207, 309, 66 A. 354; McCaskey's Estate, 307 Pa. 172, 160 A. 707. 'Whilst a percentage is constantly spoken of and used because of its convenience, yet, it is compensation, nothing more or less, that is steadily kept in view': Montgomery's Appeal, 86 Pa. 230, 235. The rule as applied by the appellate courts and the Orphans' Courts throughout the state is to allow commissions on the appraised value of the corpus at the time when it reaches the hands of the executor or administrator. 'This is the value of the assets actually administered.' "

In the distribution account, attached to the first and final account, credit is taken for advanced distribution among the residuary heirs of the Reynolds Brothers stock, as follows:

"12-8-44—Arthur J. Reese. Bequest under Article 10 of the Will. 63 shares of capital stock of Reynolds Bros., Inc., value . . $ 2,835.00

"Oscar A. Shield. Bequest under Article 11 of Will. 58 shares capital stock of Reynolds Bros., Inc., value . . . . . . . . . . 2,610.00

"Paul E. Harbaugh. Bequest under Article 12 of the Will. 43 shares capital stock of Reynolds Bros., Inc., value . . . . 1,935.00

"Harold C. Jackson. Bequest under Article 13 of Will. 43 shares Reynolds Bros., Inc., capital stock, value . . . . . . . . . . . . 1,935.00

"Gertrude Warner. Bequest under Article 14 of Will. 41 shares capital stock of Reynolds Bros., Inc., value . . . . . . . . . . 1,845.00

"Third National Bank & Trust Company, Trustees. Bequest under Article 16 of the Will. 251 shares capital stock of Reynolds Bros., Inc., value . . . . . . . . . . 11,295.00

"Total . . . . . . . . . . . . . . . . . . . . . . $22,455.00"

It will be noted that the residuary legatees, including exceptant, took the stock in kind at the increased value and not at the value placed on the stock as set out in the inventory.

It must also be noted that the value of the stocks actually administered amounted to $22,455. In Peck's Estate, 42 D. & C. 47, the court held that the basis of computation may be increased or diminished in the face of exceptional circumstances, and where the value of an asset in a decedent's estate is estimated in the inventory, and subsequently proves to have a substantially higher value, the executor's commission is properly computed on the higher value.

With respect to the Federal taxing agents increasing the assets of this estate for tax purposes, we have found no authority, nor has it been shown us that the Federal Government can increase or decrease the value of assets of decedent's estate for distribution purposes. The Federal Government has the right to increase assets of an estate for tax purposes, but we are not distributing decedent's assets as appraised by the Federal Government.

In the case before us, the executor, having managed the estate in an exceptionally skillful manner, and the care and ability rendered by executor in administering the estate, evidences unusually good judgment and as a result the value of decedent's assets were increased more than 50 percent, and furthermore, in this particular case, the residuary distributees, including exceptant, accepted the stock in question in kind at the increased value placed thereon. We feel that the executor is entitled to commissions on $22,455, the value of the shares as set forth in executor's account, rather than the $14,970, the value of the shares as set forth in the inventory.

Now, February 3, 1947, for the reasons set forth in the foregoing opinion, the exception to the first and

final account is dismissed; executor's commission in the amount of $374.25 is allowed; and said executor's account is confirmed finally.